James CUMMINGS and Donna Cummings *v.*
STATE of Arkansas

CR 03-09 110 S.W.3d 272

Supreme Court of Arkansas
Opinion delivered June 12, 2003

*James W. Massey*, Public Defender, for appellant.

*Mike Bebee*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellee.

Jim Hannah, Justice. A Logan County jury convicted appellant James Cummings of (1) producing, directing, or promoting a sexual performance, and (2) permitting a child to engage in sexually explicit conduct for use in visual or print medium and sentenced him to thirteen years' incarceration in the Arkansas Department of Correction. The jury convicted appellant Donna Cummings of permitting a child to engage in sexually

explicit conduct for use in visual or print medium and sentenced her to ten years' incarceration.

The appellants argue that: (1) the trial court erred by denying a motion to suppress evidence obtained through the execution of a nighttime search; (2) there is not sufficient evidence to support the verdict; (3) Ark. Code Ann. § 5-27-303(b) (Repl. 1997) is a lesser-included offense of Ark. Code Ann. § 5-27-403(a) (Repl. 1997); therefore, the trial court erred by submitting both charges to the jury; and (4) the State's showing of a portion of a home video which depicted Donna stripping and masturbating was improper character evidence.

We find no error and affirm. Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(b)(6).

*Facts*

Officer Lonnie Whitehead of the Magazine Police Department testified that Alfreda Robinson, a school counselor at Magazine High School, received an anonymous phone call from an individual who told her that one of the students at the junior high school had a "paid website" on the Internet. Whitehead stated that Robinson was concerned about the website and informed Clarence Renfro, the school principal. After accessing the website, Renfro contacted Whitehead and asked him to initiate an investigation.

Whitehead testified that he accessed the website, cindysworld2000.com, and that since full access to the website required membership, he was only able to view the home page. He testified that on the home page, "there were several pictures showing this girl in various stages of undress where you could see partial breast and very revealing swimwear, thong panties, and things like that." The website depicted photographs of C.G., who is Donna's daughter and James's stepdaughter.

Whitehead testified that, after viewing the pictures, he and other officers went to the appellants' home in Magazine. Whitehead testified that he and the officers talked to James about the website, and that James showed the officers portions of the website. In addition, James provided the officers with his user name and password so the officers could access the entire website.

Whitehead testified that James "stated that he'd taken the pictures and put them on the website." Whitehead also stated that James thought "[s]ome of them . . . were fairly revealing so he posted them — he put them on the computer, but did not post them to the website itself."

After speaking to James, Whitehead and the other officers went to the Booneville Police Department where, using the password and user name provided by James, they accessed the website. Whitehead testified that he showed the pictures to Logan County Deputy Prosecutor Brian Mueller, and that Mueller thought the pictures constituted enough evidence to get a search warrant for the appellants' home. Whitehead's affidavit for search warrant stated, in relevant part:

> On 10-11-01, I, Lonnie Whitehead, . . . received a request to initiate an investigation of child sexual exploitation. On 10-10-01 the school Counselor, Alfreda Robinson, received an anon. call from a man advising that a student at the Jr. High had a paid web site on the internet with pictures posted where she was wearing underwear and thong panties. He advised the counselor of the juveniles name. On 10-1-01 [sic] Clarence Renfroe, Principal advised this officer and the Booneville Police Dept., specifically Jackie Young, of this web site. Clarence Renfroe stated that he had viewed this web site. . .and indicated that it contained sexually suggestive pictures. Officers Young and Marshal Whitehead brought this web site up and viewed many of these pictures. These pictures showed the juvenile in various states of undress. Some pictures showed partial breasts and buttocks and in sexually suggestive positions.

> On 10-11-01, at 3:55PM, Sheriff's Deputy's Albert Brown and Theo Capes and Marshal Whitehead went to 97 West Ellington street in Magazine, Ar. Upon their arrival James Cummings met them out side of the house. After initial conversation and questions about the web site, Deputy Al Brown asked to see the web site in the home. They entered into the home through the kitchen door and went to the computer located to the left of the door in an alcove off of the kitchen. James Cummings sat at the computer and pulled up the web site and showed them various pictures of the juvenile. James Cummings stated that he had taken these pictures and he thought some pictures were too revealing, although he put them on the computer he did not post them to the web site.

It is believed that these pictures/videos computer and camera will be removed or destroyed as James Cummings is now aware of this investigation. Due to the fact that these items may be destroyed or concealed, these officers specifically request that they be allowed to conduct a night time search. A detailed description of the items to be seized are as follows, video tapes, magazines depicting pornographic material, photographs, computer, and all hardware connected to the computer, floppy drives, discs, Zip drives, discs, CD drives, CD's Tape back up drives, tapes, sticky notes, digital camera and tapes, video camera digital, books located on the premises.

Based on the foregoing affidavit, the magistrate issued a search warrant and authorized its execution at any time. Immediately after obtaining the search warrant, Whitehead and other officers went to the appellants' home and seized evidence, including three videotapes which included scenes of both C.G. and Donna in the nude.

Prior to trial, the appellants filed a motion to suppress the evidence seized at their home. They argued that the officers executed a nighttime search based on conclusory language contained in the affidavit for search warrant. The trial court denied the motion to suppress.

At trial, a videotape depicting Donna performing a striptease in front of her minor children was admitted without objection. After the videotape was admitted, the videotape was played and only then did defense counsel object, arguing that the portions of the tape that did not involve C.G. were not relevant and unduly prejudicial. The trial court overruled the objection as untimely.

At the end of trial, defense counsel argued that the jury should be instructed that Ark. Code Ann. § 5-27-303(b) is a lesser-included offense of Ark. Code Ann. § 5-27-403(a). Defense counsel moved for the trial court to instruct the jury that, since one of the offenses for which the appellants was charged was a lesser included offense, the jury could only convict on one of the two charges. The trial court denied the motion.

*Sufficiency of the Evidence*

██ ██ The appellants challenge the sufficiency of the evidence supporting their convictions. Although the appellants raise this issue second on appeal, double jeopardy considerations require this court to consider a challenge to the sufficiency of the evidence prior to the other issues on appeal. *See Jones v. State*, 349 Ark. 331, 78 S.W.3d 104 (2002). In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *See Edmond v. State*, 351 Ark. 495, 95 S.W.3d 789 (2003). We will affirm a conviction if substantial evidence exists to support it. *See id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *See id.*

"Any parent, legal guardian, or person having custody or control of a child who knowingly permits such child to engage in, or to assist any other person to engage in sexually explicit conduct for the purpose of producing any visual or print medium depicting such conduct shall be guilty" of a felony. Ark. Code Ann. § 5-27-303(b). "Lewd exhibition of: [t]he genitals or pubic area of any person; or [t]he breast of a female" constitutes "sexually explicit conduct." Ark. Code Ann. § 5-27-302(E)(i), (ii) (Repl. 1997).

"It is unlawful for any person if, knowing the character and content of the material, he produces, directs, or promotes a performance that includes sexual conduct by a child younger than seventeen (17) years of age." Ark. Code Ann. § 5-27-403(a) (Repl. 1997). " 'Performance' means any play, dance, act, drama, piece, interlude, pantomime, show, scene, or other three-dimensional presentation or parts thereof whether performed live or photographed, filmed, videotaped, or visually depicted by any other photographic, cinematic, magnetic, or electronic means." Ark. Code Ann. § 5-27-401(1) (Repl. 1997). "Sexual conduct" means, *inter alia*, "lewd exhibition of the genitals or pubic area of any person or the breasts of a female." Ark. Code Ann. § 5-27-401(3) (Repl. 1997).

At trial, the State introduced photographs and videotapes seized from the appellants' home pursuant to a search warrant.

C.G., who was thirteen years old at the time of the trial, testified that she posed for photographs that James took for a website called cindysworld2000.com. The photographs depict C.G. in various stages of undress, posing in a suggestive manner. In one of the photographs, C.G.'s breast is partially exposed. In another photograph, C.G.'s pubic area is exposed.

C.G. also testified that her stepfather videotaped her posing nude with her mother, Donna. The videotapes introduced at trial depict C.G. in various stages of undress. On the tapes, a male voice can be heard directing C.G. to pose. At trial, C.G. testified that it was James's voice on the tapes.

Throughout the videotapes, C.G.'s breasts and pubic area are exposed. For example, in one of the videotapes, C.G. appears to be wearing only a sheer, white top and panties. James directs her to pose and, on occasion, instructs C.G. to open her top and expose her breasts. James can also be heard instructing C.G. to change clothes. The video camera is left on while C.G. is changing and, as a result, the tape features C.G. completely nude.

Another videotape depicts C.G. and Donna taking a bubble bath together. Both C.G. and her mother are nude. James can be heard directing both C.G. and Donna to assume various poses. James also instructs C.G. to turn a certain way so that her breasts are more visible. James directs C.G. and Donna to wash one another, and he tells them to change places in the bathtub. When C.G. moves, her pubic area is visible.

Another tape depicts C.G. and Donna lying on a bed together. Both C.G. and Donna are dressed in lingerie. James can be heard telling C.G. and Donna how to pose. He can also be heard directing C.G. and Donna to pull down the straps of their lingerie to expose their breasts. On the videotape, C.G. and Donna comply with every suggestion and direction that James makes.

The appellants contend that the evidence cannot support a conviction because they did not knowingly engage C.G. in sexually explicit conduct "because the intent of the videos and pictures was for modeling purposes." Further, the appellants state that "[t]he same argument applies for James Cummings's conviction on the producing charge: he did not produce a sexual perform-

ance because the purpose of the film was for modeling and not for anything sexual." The State contends that "whether the videotapes and photographs contained a lewd display of C.G.'s breasts and genital areas was a fact question for the jury, and the items themselves were of such a nature that a reasonable juror could conclude that the tapes and photographs were made with the knowledge that they contained those lewd displays." We agree with the State's contention.

In *Proctor v. State*, 349 Ark. 648, 671, 79 S.W.3d 370 (2002), this court stated:

> A person's state of mind at the time of a crime is seldom apparent. One's intent or purpose, being a state of mind, can seldom be positively known to others, so it ordinarily cannot be shown by direct evidence, but may be inferred from the facts and circumstances shown in evidence. Since intent cannot be proven by direct evidence, members of the jury are allowed to draw upon their common knowledge and experience to infer it from the circumstances.

*Id.* (citing *Tarentino v. State*, 302 Ark. 55, 58, 786 S.W.2d 584 (1990)).

Indeed, in the present case, the jury could have inferred that the appellants' intent in making the videotapes, as well as in operating the website which displayed pictures of C.G. in various stages of undress, was for sexual purposes and not for "modeling purposes," as the appellants contend.

Finally, the appellants argue that, in the videotapes played to the jury, "there were no scenes containing any type of sex." They argue that the only definition of "sexually explicit conduct" in Ark. Code Ann. § 5-27-302(2) (Repl. 1997), and the only definition of "sexual conduct" in Ark. Code Ann. § 5-27-401(3) (Repl. 1997) that could apply to the video is "lewd exhibition" of genitals or a female breast. The question, according to the appellants, is whether the scenes were a "lewd exhibition." The appellants contend that the scenes did not constitute a lewd exhibition because the appellants did not knowingly engage C.G. in lewd conduct.

Though "lewd" is not defined in the Arkansas Code, the court of appeals has stated that "lewd" is a common word with an ordinary meaning. *See Gabrion v. State*, 73 Ark. App. 170, 173,

42 S.W.3d 572 (2001). *Black's Law Dictionary* defines "lewd" as "[o]bscene or indecent; tending to moral impurity or wantonness." 919 (7th ed. 1999).

In *Gabrion*, the appellant was convicted of two counts of pandering or possessing a visual or print medium depicting sexually explicit conduct involving a child. In that case, two individuals stated that Gabrion possessed videotapes containing child pornography. 73 Ark. App. at 172. Gabrion admitted that he had made the videotapes of the girls, whom he knew to be fourteen years old. *Id.* "On the tapes, Gabrion can be seen and heard directing both girls to undress and assume suggestive poses that showed off their breasts and buttocks." *Id.* Further, the court of appeals noted that "[t]he tapes contained full frontal nudity of both young girls as they donned costumes that Gabrion had provided for them." *Id.* Gabrion argued that the videotapes were not lewd. The court of appeals concluded that, in arguing that the images on the videotapes were not lewd, Gabrion wanted the court to "ignore the fact that the girls were underage and consider the same acts as if they were performed by adults." *Id.* at 172; *see also United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal 1986), *aff'd*, 812 F.2d 1239 (9th Cir.), *cert. denied*, 484 U.S. 856 (1987) ("Because of the sexual innocence of children, that which constitutes 'lascivious exhibition' of a child's genitals will be different from that of a 'lascivious or lewd exhibition' of an adult's genitals.")[1] In addition, the court of appeals stated that even if the

---

[1] The *Dost* court noted that the terms "'lewd' and 'lascivious' have been frequently used interchangeably." 636 F. Supp. 828, 831 n.4; *see also United States v. Long*, 831 F. Supp. 582, 587 (W.D. Ky. 1993) (stating that the words "lewd" and "lascivious" are synonymous).

The *Dost* court set out factors for determining whether a visual depiction of a minor constitutes a "lascivious exhibition of the genitals or pubic area" under the Child Protection Act. The court wrote that the trier of fact should look to the following factors, among others, that may be relevant:

1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;

2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

4) whether the child is fully or partially clothed, or nude;

scenes depicted on the videotapes were not "lewd," the scenes "were at the very least indecent and, therefore, 'lewd' as contemplated by Ark. Code Ann. § 5-27-401(3)." *Id.*

■ Similarly, in the present case, the scenes depicted in the videotapes show full frontal nudity of C.G. One of the photographs featured on the website partially shows C.G.'s breast; another photograph shows C.G.'s pubic area. Since C.G. was thirteen years old at the time of trial, it is clear that she was no older than thirteen years old at the time she was photographed and videotaped. There is substantial evidence from which the jury could conclude that the scenes depicted in the videotape and the photographs depicted on the website were "lewd," as contemplated by Ark. Code Ann. § 5-27-401(3) and Ark. Code Ann. § 5-27-303(2)(E)(i), (ii). In addition, there is substantial evidence from which the jury could conclude that the appellants permitted a child to engage in sexually explicit conduct for use in visual or print medium and that James produced, directed, or promoted a sexual performance.

---

5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

Of course, a visual depiction need not involve all of these factors to be a "lascivious exhibition of the genitals or pubic area." The determination will have to be made based on the overall content of the visual depiction, taking into account the age of the minor. For example, consider a photograph depicting a young girl reclining or sitting on a bed, with a portion of her genitals exposed. Whether this visual depiction contains a "lascivious exhibition of the genitals" will depend on other aspects of the photograph. If, for example, she is dressed in a sexually seductive manner, with her open legs in the foreground, the photograph would most likely constitute a lascivious exhibition of the genitals. The combined effect of the setting, attire, pose, and emphasis on the genitals is designed to elicit a sexual response in the viewer, albeit perhaps not the "average viewer", but perhaps in the pedophile viewer. On the other hand, if the girl is wearing clothing appropriate for her age and is sitting in an ordinary way for her age, the visual depiction may not constitute a "lascivious exhibition" of the genitals, despite the fact that the genitals are visible.

*Dost*, 636 F. Supp. at 832.

## Motion to Suppress

■ In reviewing the trial court's denial of a motion to suppress evidence, we conduct a *de novo* review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, give due weight to inferences drawn by the trial court. *Davis v. State*, 351 Ark. 406, 413, 94 S.W.3d 892 (2003) (citing *Ornelas v. United States*, 517 U.S. 690 (1996)).

■ The appellants argue that the evidence seized from their home should be suppressed because it was obtained as a result of an illegal nighttime search, in that the "statement that the items sought in the warrant will be removed or destroyed is a conclusory statement and is not supported by facts showing that the objects to be seized are in any danger of being destroyed or removed." The State argues that the affidavit was sufficient to support authorization for a nighttime search warrant. Rule 13.2(c) of the Arkansas Rules of Criminal Procedure provides:

> (c) Except as hereafter provided, the search warrant shall provide that it be executed between the hours of six a.m. and eight p.m., and within a reasonable time, not to exceed sixty (60) days. Upon a finding by the issuing judicial officer of reasonable cause to believe that:
>
> (i) the place to be searched is difficult of speedy access; or
>
> (ii) the objects to be seized are in danger of imminent removal; or
>
> (iii) the warrant can only be safely or successfully executed at nighttime or under circumstances the occurrence of which is difficult to predict with accuracy;
>
> the issuing judicial officer may, by appropriate provision in the warrant, authorize its execution at any time, day or night, and within a reasonable time not to exceed sixty (60) days from the date of issuance.

■ This court has consistently held that a factual basis supporting a nighttime search is required as a prerequisite to the issuance of a warrant authorizing a nighttime search. *Fouse v. State*, 337 Ark. 13, 989 S.W.2d 146 (1999); *Richardson v. State*, 314 Ark. 512, 863 S.W.2d 572 (1993); *Garner v. State*, 307 Ark. 353, 820 S.W.2d 446 (1991). When a search warrant is issued in

violation of Rule 13.2(c), a motion to suppress will not be granted unless the violation is "substantial." *Richardson, supra.* Failure to justify a nighttime search with sufficient factual information results in a substantial violation. *Richardson, supra; Garner, supra.* We have held that the issuance of a nighttime search warrant was in error where there was nothing to give reasonable cause to believe the items specified in the search warrant would be disposed of, removed, or hidden before the next morning. *Richardson, supra; State v. Martinez,* 306 Ark. 353, 811 S.W.2d 319 (1991).

■ ■ In *Fouse, supra,* we stated:

> This court has invalidated nighttime search warrants on several occasions when facts supporting one or more exigent circumstances have been found wanting. *See, e.g., Richardson v. State,* 314 Ark. 512, 863 S.W.2d 572 (1993); *Garner v. State,* 307 Ark. 353, 820 S.W.2d 446 (1991); *State v. Martinez,* 306 Ark. 353, 811 S.W.2d 319 (1991); *Hall v. State,* 302 Ark. 341, 789 S.W.2d 456 (1990); *State v. Broadway,* 269 Ark. 215, 599 S.W.2d 721 (1980). In *Richardson v. State, supra,* this court held that a nighttime search warrant based on a conclusory statement in the police detectives' affidavit that pornographic photographs and other evidence were in danger of being removed was issued in error. . . .
>
> Likewise, in *Garner v. State, supra,* the police officers' affidavit in support of the search warrant for drugs stated that the dwelling to be searched was located 12.5 miles from the courthouse; a person arrested for possession of drugs had stated that he bought the drugs from the appellant; the sheriff's office had received information in the past sixty days that several purchases of marijuana had been made from the appellant; and a person arrested for possession of marijuana stated that he had observed a quantity of marijuana on the appellant's property. The judge issued a nighttime search warrant and checked two boxes on the warrant: "the place to be searched is difficult of speedy access" and "the warrant can only be safely or successfully executed at night time or under circumstances the occurrence of which is difficult to predict with accuracy." In reversing the trial court's denial of appellant's motion to suppress, we said: "[C]onclusory statements [do] not suffice to establish the requisite factual basis for reasonable cause. . . . We, therefore, hold that the two statements 'checked' were conclusory and unsupported by sufficient facts and, accordingly, did not establish reasonable cause for a nighttime search. Without sufficient factual premises, it was impossible

for the municipal judge to make an intelligent finding of reasonable cause to justify a nighttime search." *Id.* at 357-358, 820 S.W.2d at 449.

We have also upheld the issuance and execution of a nighttime search warrant, when facts evidencing an exigent circumstance were present. *See, e.g., Langford v. State, supra; Owens v. State,* 325 Ark. 110, 926 S.W.2d 650 (1996). In *Langford v. State,* for example, the affidavit given in support of the nighttime search warrant contained four exigent circumstances: (1) there were drugs currently located at the appellant's residence that were packaged and maintained in a manner that their destruction or removal could be easily accomplished; (2) the appellant had threatened one of the informants in the case with a weapon, and was believed to be armed and dangerous, making the element of surprise inherent with a nighttime search essential for the safety of the officers executing the warrant; (3) the affiant had information that the appellant would be leaving on September 29, 1993, thus giving rise to the belief that the drugs would be removed; and (4) the residence was located on a hill overlooking the road, making speedy access impossible. We held that these statements contained in the affidavit presented a sufficient factual basis to support the trial court's decision to deny suppression of the evidence seized in the nighttime search.

Similarly, in *Owens v. State, supra,* the affidavit in support of the issuance of a nighttime search warrant stated in part:

> Access to the Dean Owens residence can be made only by a one lane dirt road which is filled with potholes, currently very muddy and the approach of vehicles can be observed from the residence. . . .

> Informant information has revealed that Dean and Christie (Judy) Owens have been under the constant influence of methamphetamine for the past six (6) months and have because of this use exhibited characteristics consistent with a fear of being watched and approached by law enforcement authorities at their residence. Information addressed in Paragraph Four of this affidavit supports the possibility of automatic firearm(s) being in the possession of the occupants of the Dean Owens residence. Therefore, safe and speedy access to the Dean Owens residence by authorities can only be obtained under the cover of darkness and during an hour when it would be reasonable to believe that occupants of the

residence would be less attentive to approaching officers. Speedy access is necessary both for the protection and safety of approaching officers as well as occupants of the residence and to ensure that objects to be seized are not destroyed or removed in that the residence is equipped with indoor plumbing which could easily facilitate the flushing or washing of methamphetamine out of the residence.

*Id.* at 117, 926 S.W.2d at 654. We affirmed the issuance of the nighttime search warrant based on the supporting exigent circumstances set out in the affidavit.

*Fouse*, 337 Ark. at 18-20.

After reviewing the case law concerning nighttime search warrants, the *Fouse* court stated:

In the case before us, the portion of the affidavit prepared by Detective Oser that touched on imminent removal read as follows:

It has been my experience and I know that the process of manufacturing methamphetamine takes approximately four hours and that the chemicals used to manufacture methamphetamine are volatile and subject to explode or at the least cause a fire and can be a danger to surrounding houses in a residential setting such as this. There is also an emminent (*sic*) danger that the items and hardware used to manufacture methamphetamine may be moved or destroyed and the methamphetamine product may be transported and/or sold.

We view these comments by Detective Oser as conclusory and as falling more readily within the *Richardson/Garner* line of cases where we held that factual support for a nighttime search had not been forthcoming. Nor can we agree with the trial court that a strong odor of ether detected at the Fouse residence at 9:00 p.m. on December 22, 1997, was a reasonable basis for concluding that methamphetamine was to be removed or sold or both within the next four hours and that a nighttime search was justified. We hold that not only was the search warrant deficient under Ark. R.Crim. P. 13.2(c) but that probable cause was lacking to justify a nighttime search.

*Id.* at 20-21.

In the present case, the appellants argue that "[t]here is nothing in the Affidavit stating any facts that show Mr. Cummings might destroy or remove any evidence, or that he is any way motivated to do so." We disagree. The affidavit states: "James Cummings stated that he had taken these pictures and he thought some pictures were too revealing, although he put them on the computer he did not post them to the web site." This statement indicates that C.G. was photographed and that some of the photographs were later deemed "too revealing." The statement also suggests that those photographs are still in existence.

 In *Richardson, supra,* we concluded that the affidavit for search warrant which listed the items to be seized and then stated that " '[i]t is further believed that the above described illegal items are in danger of being removed . . . or destroyed' " did not "give reasonable cause to believe the items specified in the search warrant would be disposed of, removed, or hidden before the next morning." 314 Ark. at 518. The present case is distinguishable from *Richardson, supra.* In the present case, the affidavit gives reasonable cause for the officers to believe that the specified items of the search would be disposed of or destroyed, in that it plainly states: "It is believed that these pictures/videos computer and camera will be removed or destroyed *as James Cummings is now aware of this investigation.*" (Emphasis added.)[2]

 In *Garner, supra,* the court held that the affidavit was insufficient where "the officers merely placed checks on two lines in front of conclusory statements to establish reasonable cause." 307 Ark. at 357. Here, the affidavit clearly established the requisite factual basis to justify a nighttime search. The affidavit stated that James indicated that he had photographed C.G., and that some of the photographs were too revealing, so he did not post them to the website. The affidavit also explained that since the officers had visited James at his home, he was now aware of the investigation. James's comment to police that he had photographs that were too revealing, coupled with James's knowledge an inves-

---

2 We understand that even if the appellants had deleted the photographs from their computer, it is possible that the photographs could still be retrieved from the computer's hard drive. However, it is also possible that the appellants could have disposed of their computer and, it is further possible that the appellants could have destroyed other items listed on the search warrant, such as videotapes, discs, and cameras.

tigation was in progress, raises the real danger that he would attempt to destroy evidence. These facts are sufficient to justify a nighttime search. The trial court did not err in denying the appellants' motion to suppress.

### Lesser Included Offense

The appellants argue that the trial court erred by submitting both the charges of permitting a child to engage in sexually explicit conduct for use in visual or print medium and producing, promoting, or directing a sexual performance to the jury. Thus, the appellants argue that their double-jeopardy rights have been violated.[3]

This court considered a similar issue in *Hill v. State*, 314 Ark. 275, 862 S.W.2d 836 (1993). In *Hill, supra*, the appellant was charged with manufacturing a controlled substance and possessing drug paraphernalia. *Id.* at 277. He brought a pretrial motion to dismiss one of the charges, arguing that bringing a "'defendant to trial on both charges constitutes double jeopardy.'" *Id.* at 281. The appellant made the same motion at trial. *Id.*

The court stated that "a defendant may be prosecuted for more than one offense, but, under specified circumstances, a judgment of conviction may only be entered for one of the offenses." *Id.* at 282. The court explained Ark. Code Ann. § 5-1-101 as follows:

> Perhaps the best example of the way the statute is intended to work is in the case where a prosecutor is entitled to go to the jury and ask for conviction on the greater or the lesser offense, and the jury might find a defendant guilty of both the lesser included offense and the greater offense. Under the statute, the trial court should enter the judgment of conviction only for the greater conviction. The purpose of the statute in such a case is to allow a conviction of the lesser included offense when the accused is not convicted of the greater offense, but the trial court is clearly directed to allow prosecution on each charge.

---

[3] Donna was convicted only of permitting a child to engage in a sexually explicit performance for use in a visual or print medium; therefore, she cannot argue that her double-jeopardy rights have been violated. We address the double-jeopardy argument only as it applies to James.

*Id.* Here, the trial court was correct to allow prosecution on each charge and to submit both charges to the jury.

██ ██ The State maintains that James's double-jeopardy rights were not violated. We have stated that the Double Jeopardy Clause protects criminal defendants from (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *Hughes v. State*, 347 Ark. 696, 66 S.W.3d 645 (2002). Whether a greater offense and its lesser-included offense are considered the same offense for double-jeopardy purposes depends on whether each statutory provision requires proof of a fact that the other does not. *Id.* Under this test, a greater offense and its lesser-included offense are the same offense. *Id.*

Ark. Code Ann. § 5-1-110 (Repl. 1997) provides, in part:

> (a) When the same conduct of a defendant may establish the commission of more than one (1) offense, the defendant may be prosecuted for each such offense. He may not, however, be convicted of more than one (1) offense if:

> (1) One offense is included in the other, as defined in subsection (b) of this section; or . . .

> (b) A defendant may be convicted of one offense included in another offense with which he is charged. An offense is so included if:

> (1) It is established by proof of the same or less than all the elements required to establish the commission of the offense charged; . . .

The State argues that, under these standards, the offense of engaging children in sexually explicit conduct for use in visual or print media is not a lesser-included offense of promoting a sexual performance because the former offense, which Appellants claim is the lesser offense, requires proof of a fact that the latter does not: status as a parent, guardian, or custodian of a child. Because engaging a child in sexually explicit conduct for use in visual or print medium requires proof of an additional fact not required for producing directing, or promoting a sexual performance, a prosecution for both offenses may lie without offending the Double Jeopardy Clause.

The appellants argue that "[t]he only difference in the two statutes is that Ark. Code Ann. § 5-27-303 concerns 'any parent, legal guardian, or person having custody or control of a child' and Ark. Code Ann. § 5-27-403 concerns 'any person.'" The appellants contend that "since Ark. Code Ann. § 5-27-403 covers 'any person,' it includes the same class of people as in Ark. Code Ann. § 5-27-303."

 James was convicted of violating Ark. Code Ann. § 5-27-303(b)[4] and Ark. Code Ann. § 5-27-403(a). The statutes appear to be similar. However, in comparing the two statutes, it is evident that they constitute two separate offenses, in that the actor and prohibited conduct in section 5-27-303(b) is different from the actor and prohibited conduct in section 5-27-403(a).

> 5-27-303. Engaging children in sexually explicit conduct for use in visual or print medium.
>
> (a) Any *person* who *employs, uses, persuades, induces, entices, or coerces* any child to engage in, or who has a child assist any other person to engage in, any sexually explicit conduct for the purpose of producing any visual or print medium depicting such conduct shall be guilty of a Class C felony for the first offense and a Class B felony for subsequent offenses.
>
> (b) Any *parent, legal guardian, or person having custody or control of a child* who knowingly *permits* such child to engage in, or to assist any other person to engage in sexually explicit conduct for the purpose of producing any visual or print medium depicting such conduct shall be guilty of a Class C felony for the first offense . . .

(Emphasis added.)

Under section 5-27-303(a), the actor is any person. The prohibited conduct is *employing, using, persuading, inducing, enticing, or coercing*. Under section 5-27-303(b), the actor is a parent, legal guardian, or person having custody or control of a child. The prohibited conduct is *permitting*.

> 5-27-403. Producing, directing, or promoting sexual performance.

---

[4] We include Ark. Code Ann. § 5-27-303(a) in our discussion only for illustrative purposes.

(a) It is unlawful for any *person* if, knowing the character and content of the material, he *produces, directs,* or *promotes* a performance that includes sexual conduct by a child younger than seventeen (17) years of age.

(b) Any person violating this section is guilty of a Class B felony.

(Emphasis added.)

Under section 5-27-403(a), the actor is any person. The prohibited conduct is *producing, directing,* or *promoting.*

 Ark. Code Ann. § 5-27-303(b) and Ark. Code Ann. § 5-27-403(a) are separate offenses. Under section 5-27-303(b), James is a stepparent[5] who permitted his stepdaughter to engage in the lewd exhibition of her breasts and genitals or pubic area for the purpose of producing photographs and videotapes depicting such

---

[5] We note that the appellants did not raise the issue of whether, under section 5-27-303(b), a stepparent is considered a "parent, legal guardian, or person having custody or control of a child." Title 5, chapter 27, of the Arkansas Code Annotated does not provide a statutory definition for a "parent, legal guardian, or person having custody or control of a child."

Ark. Code Ann. § 5-14-101(10) (Repl. 1997) provides:

"Guardian" means a parent, stepparent, legal guardian, legal custodian, foster parent, or anyone who, by virtue of a living arrangement is placed in an apparent position of power or authority over a minor.

In *Reinert v. State,* 348 Ark. 1, 71 S.W.3d 52 (2002), the appellant was convicted of three counts of first-degree violation of a minor, after C.J., the appellant's girlfriend's sixteen-year-old daughter, stated that she and the appellant had engaged in sexual intercourse three times. In holding that the appellant was a guardian of C.J., we wrote:

It is clear that Reinert's actions fall within this definition. It is undisputed that he had been living with his girlfriend and her children, including C.J., for over two years. Further, Reinert also admitted that, as between him and the girl's mother, he would be considered the disciplinarian and the authority figure in the household. . . . .

*Id.* at 5.

In the present case, James lived with Donna, C.G., and other minor children. C.G. testified that she called James "dad." She further testified that it was her dad's voice directing her and telling her what to do on the videotape. It is evident, from listening to James's directions to C.G. on the videotape that he was in control of C.G. C.G. stated that she gave some of the money she earned from the website to her "parents." C.G.'s reference to her "parents" was a reference to James and Donna. Clearly, like the appellant's actions in *Reinert, supra,* James's actions fall within the definition of "guardian." As a guardian to C.G., James's conduct was prohibited under section 5-27-303(b).

conduct. Under section 5-27-403(a), James is a person who produced, directed, or promoted a website which included photographs depicting the lewd exhibition of the breasts of a female and the genitals or pubic area of C.G., a child younger than seventeen years of age. In addition, James produced, directed, or promoted videotapes which included scenes depicting the lewd exhibition of the breasts of a female and the genitals or pubic area of C.G., a child younger than seventeen years of age.

### Admissibility of Video Evidence

On appeal, the appellants argue that the State used improper character evidence by showing a portion of a home video which depicts Donna dancing nude in front of her minor children.[6] The State argues that the appellants' argument is not preserved for appeal because the objection to the admissibility of evidence was not made at the first opportunity. We agree with the State; therefore, we do not address the appellants' argument that the State used improper character evidence.

At trial, the State moved for the introduction of State's Exhibit 8, one of three videotapes seized from the appellants' home. In addition, the State offered Exhibit 9, which contained, on one videotape, copies of all three videotapes seized. Both tapes were admitted without objection by the appellants. Exhibit 9 was played for the jury. During the playing, the appellants objected, arguing that the portions of the tape that did not involve C.G. were irrelevant and prejudicial. The trial court overruled the appellants' objections, stating that "[t]he tape is already in without objection," and that the objection was untimely.

To preserve a point for appeal, an objection must be made at the first opportunity. See *Gamble v. State*, 351 Ark. 541, 95 S.W.3d 755 (2003); *Berger v. State*, 343 Ark. 413, 36 S.W.3d 286 (2000). We have stated that if a contemporaneous objection is not made during a jury trial, the proverbial bell will have been rung and the jury prejudiced. *Stewart v. State*, 332 Ark. 138, 964 S.W.2d 793 (1998).

---

[6] We note that the appellants did not specifically raise this argument before the trial court. At trial, the appellants argued that the evidence was not relevant and unduly prejudicial.

In the present case, the first opportunity for the appellants to make an objection at trial was when the State introduced the videotapes and published them to the jury. The appellants did not object to the videotapes being admitted into evidence; rather, the appellants waited to object until after the videotape had already been played for the jury. At that point, an objection was untimely. Moreover, it is apparent that once the jury viewed the videotape, the bell had already been rung.

In sum, we find no error. Accordingly, we affirm.

Affirmed.

CORBIN, J., not participating.