Glenn E. GEORGE *v.* STATE of Arkansas

CA CR 02-1001                                                          140 S.W.3d 492

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered December 17, 2003

*T.B. Patterson, Jr., P.A.*, by: *T.B. Patterson, Jr.*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellee.

WENDELL L. GRIFFEN, Judge. This case arises from the criminal conviction of Glenn E. George of nine counts of possessing visual or print medium depicting sexually explicit conduct of minors. The conviction resulted in a sentence of ninety years' imprisonment and $78,000 in fines. Appellant argues that the trial court erred in denying (1) his motion to suppress evidence seized pursuant to an invalid warrant; (2) his motion to suppress evidence not described in the warrant or in the affidavit incorporated into the warrant; (3) his motion to dismiss the charges for violation of the speedy-trial rule; and (4) his motions for directed verdicts for failure of proof on three counts. We hold that the search warrant was invalid because the affidavit upon which it was based failed to state a time reference for when the criminal activity occurred or the contraband to which it referred was observed. Accordingly, we reverse and remand.

## Factual and Procedural History

In this case, the affidavit for a search warrant stated that B.T., fourteen years of age, reported to her mother on March 21, 2001, that appellant had provided her and some of her friends with alcohol and that she had seen nude photographs of girls about B.T.'s age in his apartment. On March 27, 2001, Hot Springs Police Department Detective Paul Norris interviewed B.T. and her mother and learned that, while in appellant's apartment, B.T. saw photographs of nude girls that she knew to be fourteen to fifteen years of age on appellant's computer. Subsequently, Norris also interviewed J.T., who confirmed that appellant had supplied the girls with alcohol at his apartment. J.T. also told Norris that she had found a video on appellant's computer, while she was there, depicting a friend named K.T. dancing nude.

Norris then wrote an affidavit for a search warrant. In that affidavit, Norris alleged that at appellant's specifically described residence,

> there is now being concealed certain property, namely: the evidence associated with the producing, directing, or promoting sexual performances and employing or consenting to use of child in sexual performances.

Which are[:] evidentiary items in a sexual exploitation investigation and in direct violation of Arkansas State Statute 5-27-402 and 5-27-403.

And that the facts tending to establish the foregoing grounds for issuance of a search warrant are as follows: That on 03-22-01 [B.T.'s mother] reported her fourteen year old daughter, [B.T.], revealed to her Glenn George provided alcohol to her and other friends and that she observed nude photographs of other girls she knows to be age fourteen or fifteen. [B.T.] was interviewed and stated Glenn George gave her an alcoholic beverage to drink and she saw nude photographs on George's computer of girls she knows to [be] fourteen or fifteen years old. That a friend of [B.T.'s], [J.T.], was also interviewed and stated George provided her with an alcoholic beverage and she found a video on George's computer of a friend, [K.T.], dancing nude.

The affidavit was signed by Norris. The issuing magistrate signed below, with a handwritten date of March 26, 2001. The affidavit was file-stamped April 2, 2001. The warrant itself, however, also signed by the magistrate, shows the date of April 27, 2001, but was also filed on April 2, 2001. In relevant parts, the warrant reiterated the descriptions and allegations contained in the affidavit, and otherwise expressly incorporated the "attached affidavit" by reference.

Norris executed the warrant that same day (March 26, 2001). Police officers found photographs of minor girls and videotapes, all of which appeared to the officers to be lewd material. Some of the material showed appellant engaging in sexual activity with some of the minors.

Appellant was arrested on March 28, 2001. His trial commenced on May 15, 2002. At a pretrial hearing, appellant moved to suppress the evidence seized in the search. One of his arguments was that the affidavit failed to establish a time frame when the observations leading to the allegations had been made. The trial court denied the motion to suppress, reasoning as follows:

[L]ooking at the four corners of the [affidavit for the search warrant], there is sufficient time frame alleged that the court could feel that there was just cause for the issuance of the warrant. The matters that were being sought were not consumables; they were not items that were normally moved in the course of illegal commerce; there's nothing to indicate that the items would not

remain in place for a substantial period of time; they were being kept by [appellant] for what appeared to me off the facts alleged for his personal use, primarily; and the time frame is set out on the warrant I think to give me sufficient cause to believe that this illegal material remained on his premises on the date that the warrant was issued.

Appellant also made a number of technical challenges to the warrant, none of them to any avail.

At the end of the State's case-in-chief, appellant moved for a directed verdict on counts three through five of the criminal information. Count three alleged that appellant engaged in deviate sexual activity with another person not his spouse who was less than fourteen years old. Counts four and five alleged that appellant possessed visual or print medium depicting minors participating or engaging in sexually explicit conduct. Counsel for appellant stated the following:

[A]s to each of the counts that involve these young girls just baring their breasts for the video camera. At least two of them testified that they took them, and there was nothing to show that [appellant] knowingly possessed the items, even if they met the definition of sexual behavior. I don't think they do, because they don't qualify as a lewd exhibition. It's the same sort of flashing behavior you see maybe in New Orleans for the Mardi Gras where they toss jewels and silly things like that. It's more akin to mooning [than] to lewd behavior.

The trial court denied the motion. Appellant then rested and renewed his motion, which was again denied. The resulting convictions were based on the offense of possessing visual or print medium depicting sexually explicit conduct involving children.

### Sufficiency of the Evidence

Appellant challenges the sufficiency of the evidence underlying his conviction of possessing visual or print medium depicting sexually explicit conduct of minors. He does so as his last point of error. However, out of concern for double-jeopardy, we must consider this point first. *Winbush v. State*, 82 Ark. App. 365, 107 S.W.3d 882 (2003).

In his motion for directed verdict, appellant argued that there was insufficient proof of his knowledge and insufficient proof of the allegation that the contents of the visual or print media constituted in fact lewd exhibition. We note in passing that appellant now argues only the latter point. We also recognize that appellant did not offer a constitutional challenge to the statutes in question, and does not do so now on appeal.

We review challenges to the sufficiency of the evidence by determining whether substantial evidence, direct or circumstantial, supports the guilty verdict. *Cummings v. State*, 353 Ark. 618, 110 S.W.3d 272 (2003). Substantial evidence is evidence of sufficient certainty and precision that compels a conclusion and passes beyond mere suspicion or conjecture. *Id.* In reviewing the sufficiency of the evidence, we view the evidence in a light most favorable to the verdict and consider only that evidence supporting it. *Id.*

The Arkansas Code forbids the knowing possession of "any visual or print medium depicting a child engaging in sexually explicit conduct." Ark. Code Ann. § 5-27-304(a)(2) (Repl. 1997). Among the statutory definitions pertinent to the term "sexually explicit" we find the "[l]ewd exhibition of . . . [t]he breast of a female." Ark. Code Ann. § 5-27-302(2)(E)(ii) (Repl. 1997). Our case law has defined "lewd" to mean "obscene, lustful, indecent, lascivious," as well as "offensive to common propriety," or "offending against modesty or delicacy." *Gabrion v. State*, 73 Ark. App. 170, 173, 42 S.W.3d 572, 574 (2001).

In fact, our decision in *Gabrion* is quite to the point, in that that case involved a videotape depicting two minor girls. We noted in our opinion that the video tapes involved in that case contained "full frontal nudity." *Id.* at 172, 42 S.W.3d at 573. In addition, the videotape showed Gabrion directing the girls to undress and "assume suggestive poses that showed off their breasts and buttocks." *Id.*, 42 S.W.3d at 573. We found that the jury could properly deem the videotape to be lewd and noted further that Gabrion apparently wanted us to ignore the fact that the girls on the tape were underage and not adults. *Id.*, 42 S.W.3d at 574.

In the present case, we hold that the jury had substantial evidence before it to convict appellant of possessing visual or print medium depicting sexually explicit conduct of minors. The images in question were found within a videoclip on two CD–

ROMs. The CD-ROMs were introduced at trial as State's Exhibits A and B. Still images from those videoclips were introduced separately as State's Exhibits E, F, and J. Among those images, one was labeled "[B.T.'s] Tits." Most of the pictures show young girls displaying their breasts.

B.T. testified at trial that she was the girl depicted in the pictures referred to as Picture 37 and "[B.T.'s] Tits." ·She also testified that the pictures were taken on August 10, 2000, and that her date of birth was June 12, 1986. Another witness identified herself and two other girls on Picture 166. She stated that she was fourteen years of age when that picture was taken.

In Exhibits E and F, the girls can be seen dancing and posing provocatively. In Exhibit J, the images mostly show the girls smiling and posing. However, the first image of that series is labeled "Goodbigdicksuckers." That same image shows the girls with their mouths wide open. The captions of other images reveal titles such as "My pussy is so hot," "Please fuck me," and "I'll fuck you or suck you."

■ While appellant attempts to characterize the images as something akin to mere nude photos or something that could be seen at a Mardi Gras party, the evidence leads us to a different conclusion. The various labels, especially when taken together with the specific kind of posing, dancing, and frontal nudity, establish very well the lewd nature of the material. In particular we point out that appellant's case really appears indistinguishable from *Gabrion v. State, supra,* where we held that frontal nudity of minors, along with suggestive posing and directing, was sufficient evidence for the same offense. Furthermore, the crucial fact, and most relevant for the conviction in both cases, remains that both this case and *Gabrion* involve minors, not adults. Thus, it was not error for the trial court to deny appellant's motions for directed verdict.

### *Defective Affidavit*

Appellant next argues that the affidavit for the warrant contained an insufficient reference to time, that the warrant itself contained an inadequate description of property to be seized, that the warrant contained a number of technical irregularities, and that property not specified in the warrant was seized. We reverse the trial court's denial of the motion to suppress based on the insufficient time reference in the affidavit.

■■  We review a trial court's determination of questions of probable cause or reasonable suspicion *de novo*, based on the totality of the circumstances, reviewing the findings of historical fact for clear error and determining whether those facts gave rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court. *Cummings v. State, supra.* The magistrate who issues the warrant must make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Sanders v. State,* 76 Ark. App. 104, 61 S.W.3d 871 (2001).

■■  Where the affidavit for a search warrant makes no mention of the time during which the alleged criminal activity occurred or was taking place, the affidavit is considered insufficient to support the issuance of a search warrant, leading to the suppression of the evidence seized in the resulting search. *Collins v. State,* 280 Ark. 453, 658 S.W.2d 877 (1983). Pursuant to Ark. R. Crim. P. 13.1(b) (2003), some mention of time in the affidavit is crucial because a magistrate must know that criminal activity or contraband exists where the search is to be conducted at the time of the issuance of the warrant. *Heaslet v. State,* 77 Ark. App. 333, 74 S.W.3d 242 (2002). We have held that suppression is not required if the time-frame can be inferred from the affidavit itself. *Id.*

■■  The State argues that appellant's claim regarding insufficient time-frame is akin to what is known as a staleness claim. We disagree. A staleness claim does not challenge the complete lack of any time reference, or inference, within the four corners of the affidavit for the search warrant, but bases the challenge on the period of time that has passed between observation of the criminal activity or contraband — as set forth in the affidavit for the search warrant — and the execution of the search. In its argument, the State cites several cases that all correctly hold that, beside the time factor, we must consider other factors, such as the nature of the criminal activity involved and the kind of property subject to the search. *See, e.g., Lacy v. United States,* 119 F.3d 742 (9th Cir. 1997); *United States v. Maxim,* 55 F.3d 394 (8th Cir. 1995); *United States v. Rugh,* 968 F.2d 750 (8th Cir. 1992); *Chrobak v. State,* 75 Ark. App. 281, 58 S.W.3d 387 (2001); *Hause v. Commonwealth,* 83 S.W.3d 1 (Ky. Ct. App. 2001).

None of those cases involve the situation we face. This case involves an affidavit that omits any reference to when the informant observed the alleged criminal activity and contraband in appellant's home. The affidavit merely sets out the date when the informant told her mother about the allegations. Every case cited by the State, however, involves a true staleness claim, where the affidavit or warrant made a specific reference to a date when the criminal activity or contraband was observed. At issue in those cases was whether the nature of child pornography give a magistrate reason to believe that images would remain in an accused's possession for longer periods of time so as to justify the various time gaps between observation of the alleged crime and the execution of the search warrant. *See, e.g., Lacy v. United States, supra.*

■ Thus, the State's argument is inapposite to the claim involved in the instant case. We do not now need to distinguish between cases involving child pornography on the one side and drugs on the other. The nature of the contraband in question becomes an issue where the challenge goes to the staleness of the information contained in the affidavit. Instead, the case law we must apply to the instant case is clear. When an affidavit does not provide any reference of time for when the criminal activity or the contraband was observed, the affidavit fails. *See Collins v. State, supra; Heaslet v. State, supra.*

Under Arkansas law, a further question is whether the affidavit, within its four corners, provided a sufficient basis for an inference of time. *See Heaslet v. State, supra.* In *Heaslet,* we held an affidavit insufficient that mostly contained dates referring to the time when the affiant received a report, not when the activity was observed. *Id.* We held that the affidavit must provide direct or circumstantial evidence that the alleged contraband indeed is at the place to be searched. *Id.* We further stated that circumstantial evidence alone that a suspect may be a drug dealer was insufficient evidence that anything is in his home. *Id.*

■ In the case at bar, the affidavit merely states the date when the informant, the minor and alleged victim, informed her mother of the allegations. There are no dates referring to when the alleged criminal activity or contraband was observed. Specifically, the affidavit does not state or suggest when appellant allegedly supplied alcohol to minors. It does not state or suggest when B.T. and/or J.T. saw nude photographs of minor-aged girls on appel-

lant's computer. By analogy to *Heaslet*, we hold that the mere allegation that a suspect may be a child pornographer, without some time reference as to when the observations were made, is insufficient circumstantial evidence to conclude that contraband will be found at his home no matter when it may have been formerly observed. Consequently, the affidavit fails for lack of a time reference and the search warrant was invalid.

To hold otherwise would amount to judicial approval of a most unusual proposition, namely that mere conjecture concerning the time of observation of the contraband suffices under the Fourth Amendment of the United States Constitution to justify a search and seizure. As stated above, the law requires for an affidavit to include either a reference of time or a basis upon which one can draw an inference. Inference, however, is not the same as conjecture. The affidavit before us contains no information that would allow us to draw a permissible inference about when the minor saw the contraband in appellant's home. Any assumptions that she might have seen the contraband shortly before she told her mother are unsupported by the facts as they were alleged in or could be inferred from the affidavit.

### Good-Faith Exception

The remaining question is whether we can uphold the trial court's decision about the search and seizure pursuant to the good-faith exception found in *United States v. Leon*, 468 U.S. 897 (1984). The good-faith exception re-validates a police officer's search and seizure even though the warrant underlying the search action is later found invalid. *Id.* However, the good-faith exception cannot cure certain errors, namely: (1) when the magistrate is misled by information the affiant knew was false; (2) if the magistrate wholly abandons his detached and neutral judicial role; (3) when the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) when a warrant is so facially deficient "that the executing officers cannot reasonably presume it to be valid." *Id.*

Our supreme court has held that the good-faith exception saves the warrant in question if we can determine from the four corners of the affidavit that the officers could infer from the affidavit itself with certainty the time during which the criminal activity was observed. *Herrington v. State*, 287 Ark. 228,

697 S.W.2d 899 (1985). In that case, the affidavit lacked any direct reference to the time of observation. *Id.* There were no terms such as "recently" or "now," and no reference to an urgent situation. *Id.* Accordingly, our supreme court declared the affidavit defective and the warrant invalid.

██ In the present case, we hold that the good-faith exception cannot save the search warrant because the affidavit was defective in that it, too, lacked any reference to the time of observation of the alleged criminal activity. As such, reliance on the warrant by the police officers executing the search warrant was unreasonable. To say otherwise would essentially mean that a police officer could reasonably rely on a search warrant based on an affidavit that does not contain any reference or ground for inference as to when the criminal activity happened or the contraband was observed. We see no legitimate reason to reach that conclusion in the face of a decade of court decisions requiring warrants to have such information and declaring them invalid without it. *See Collins v. State, supra.* Any reliance on a search warrant that is so fundamentally defective cannot be deemed reasonable under the *Leon* good-faith exception.

### Speedy Trial

██ Finally, appellant claims error in the trial court's decision to deny his motion to dismiss for lack of a speedy trial. Arkansas Rule of Criminal Procedure 28.1(b) (2003) requires the State to try a criminally accused within twelve months from the time provided in Ark. R. Crim. P. 28.2. Rule 28.2 generally provides for the twelve months to run from the time the charge is filed. However, periods of delay resulting from a continuance granted at the request of the defendant or his counsel must be considered when calculating the twelve months period. Ark. R. Crim. P. 28.3) (2003). Here, appellant was arrested on March 28, 2001. His trial did not start until May 15, 2002. However, appellant moved for a continuance on January 10, 2002. The trial court granted the continuance until May 15, 2002. Pursuant to our rules, we hold that there was no violation of the speedy-trial requirement.

## Conclusion

The dissenting opinion expresses indignation at our decision to reverse appellant's conviction and asserts that "[c]ommon sense tells us that [his] illegal activity occurred recently and was likely continuing to occur." As our opinion reports, however, the affidavit for the search warrant that the police used to seize the incriminating evidence from appellant's residence does not provide a single objective clue about when the minor informants observed illegal evidence or activity. Apparently, the police failed to ask them basic questions of criminal investigation such as, "When did you see this?" or "When did these things happen?" Had they done so and made the answers obtained from those basic queries part of the affidavit for the search warrant, the staleness cases relied on by the State would certainly be germane to our analysis and decision.

The Fourth Amendment does not permit judges to assume or imagine missing details into search warrant affidavits about when illegal activity occurred or was observed merely because we deplore criminal conduct, whether affecting minors or anyone else, or because of some subjective notion of "common sense" and "indignation." Recognizing and respecting that reality is by no means a "hyper-technical approach" as claimed by our dissenting brethren. Rather, it keeps faith with time-honored principles and procedures that underlie and give life to the Fourth Amendment.

The fact that the police have the *might* to seize material from a person's residence does not, under the Fourth Amendment, ever create the *right* to do so. Otherwise, the whole notion of probable cause, which the Fourth Amendment requires be demonstrated to an independent judicial officer before a search warrant can be issued, is a farce. Given the record now before us and a line of court decisions from this court and our supreme court declaring that to omit temporal information in a search warrant application about when alleged illegal activity occurred or was observed renders a search warrant unconstitutionally and fatally flawed, we unapologetically refuse to treat probable cause and the Fourth Amendment with such disdain.

Reversed and remanded.

GLADWIN, NEAL, and BAKER, JJ., agree.

PITTMAN and ROBBINS, JJ., dissent.

JOHN B. ROBBINS, Judge, dissenting. Many times a reversal of a criminal conviction is met with undeserved public criticism resulting from a lack of understanding that individual liberties guaranteed by our federal and state constitutions not only protect the best of us but the worst of us as well. Sometimes, however, criticism is deserved and public indignation justified. The result of the majority opinion today reverses the conviction of a man who apparently invited young girls to his apartment, doled out alcohol to make the girls more pliable, and recorded lewd acts for his and others' viewing pleasure. This reversal rests on the failure to insert the exact date that the teenagers were in the apartment. Common sense tells us that this illegal activity occurred recently and was likely continuing to occur. We do nothing to further the interests of the Fourth Amendment with the majority's hyper-technical approach and by punishing the State with suppression in this instance. If the trial judge erred by finding probable cause to exist, the good-faith exception supports denial of suppression.

After receiving a citizen complaint, the Hot Springs police officers did what they should have done. They investigated, obtained statements from persons with knowledge, prepared an affidavit in support of a request for a search warrant naming the sources of information, and presented the affidavit to a magistrate, Judge John Homer Wright, for a probable cause determination. Judge Wright concluded that the affidavit established probable cause for believing that pornographic photographs of minors were indeed located at the appellant's residence. Today, four judges of our court hold that, notwithstanding these efforts of law enforcement to comply with supreme court rules and constitutional safeguards, Mr. George's conviction must be reversed and the evidence seized may not be used against him in any subsequent trial. In arriving at this decision I submit that not only does the outcome appear unjust, but we resort to an unreasonable construction of constitutional standards to reach that result. I would affirm the suppression issue because the officers were entitled to place good-faith reliance on the warrant.

In reviewing a trial court's ruling on a motion to suppress, we make an independent determination based on the totality of the circumstances, and reverse only if the ruling is clearly against the preponderance of the evidence. *Chrobak v. State*, 75 Ark. App. 281, 58 S.W.3d 387 (2001). Critical to this inquiry is the uniform rule that some mention of time must be included in the affidavit for a

search warrant. *Hartsfield v. State*, 76 Ark. App. 18, 61 S.W.3d 190 (2001). Although the supreme court and this court have reversed cases based upon the failure of affidavits for search warrants to mention time, *Herrington v. State*, 287 Ark. 228, 697 S.W.2d 899 (1985), and *Ulrich v. State*, 19 Ark. App. 62, 716 S.W.2d 777 (1986), the appellate courts have also held that time can be inferred from the information in the affidavit. *See Collins v. State*, 280 Ark. 453, 658 S.W.2d 877 (1983); *Fouse v. State*, 73 Ark. App. 134, 43 S.W.3d 158 (2001).

Time is crucial because a magistrate must know that criminal activity or contraband exists where the search is to be conducted at the time of the issuance of the warrant. *Hartsfield v. State, supra.* It is clear that the time that is critical is the time during which the criminal activity was observed. *Id.* For a search warrant to issue, evidence, either direct or circumstantial, must be provided to show that the contraband or evidence sought is likely to be found in the place to be searched. *Yancey v. State, supra.* In *Herrington*, our supreme court held that when the omission of any reference of time in the supporting affidavit is so complete that none can be inferred, a police officer's reliance on the search warrant is unreasonable, *i.e.*, the good-faith exception will not apply. *See also Smith v. State*, 79 Ark. App. 79, 84 S.W.3d 59 (2002). I am persuaded that in this case the time element can be inferred and that, therefore, the officers could legitimately rely on the issuance of the warrant by the magistrate, even if the magistrate was incorrect to find that probable cause existed.

I refer back to the four corners of the affidavit as set forth in the majority opinion. On March 26, 2001, the officer swore out the affidavit, stating in it that there is "now" being concealed evidence associated with child pornography. The facts in the affidavit referred to a report to police on March 22, 2001, by a mother that her fourteen-year-old daughter revealed to her that appellant gave her and her friends alcohol and that while there the daughter saw nude photographs of other girls she "knows" to be fourteen or fifteen. The officer confirmed the mother's report by interviewing the daughter, who confirmed the information and added that the photos were seen on appellant's computer. The officer followed this up with an interview with the girl's friend, who stated that she was also given alcohol by appellant and that she saw a nude video of another friend on appellant's computer. There are at least two references to time — (1) the March 22 report of this illegal activity, followed by two interviews within four days

thereafter of the teenage girls who were present in appellant's apartment, and (2) the statement by the officer that there was "now being concealed" nude photos of girls presently known to be fourteen or fifteen.

In *Collins v. State*, 280 Ark. 453, 658 S.W.2d 877 (1983), the supreme court expressed approval of denying a motion to suppress in the face of a failure to state a time of criminal activity where the affidavit recited that the contraband was "now" in the suspect's possession and that the search was urgent, *Coyne v. Watson*, 282 F. Supp. 235 (D.C. Ohio 1967), and where the affidavit said that contraband was "recently" seen, coupled with the use of present tense as to the location of the contraband, *Sutton v. State*, 419 S.W.2d 857 (Tex. Crim.1967). In the present appeal, the affidavit stated that "there is *now* being concealed" pornographic evidence, and that one of the girls interviewed stated that she saw photos depicting "girls she *knows* to be fourteen or fifteen." The context of the affidavit permits the inference of present tense, as was approved in *Collins, supra*.

I also disagree with the majority opinion that the cases on "staleness" of probable cause have no relevance to this inquiry. In an internet pornography case on appeal to this court, we upheld the warrant in the face of a staleness argument even though the information came through the internet reportedly three months prior to the issuance of a search warrant. The court in *Chrobak v. State*, 75 Ark. App. 281, 58 S.W.3d 387 (2001) noted that "the tendency of pedophiles to retain child pornography for a long period of time minimized the lapse of time between information in the affidavit and the execution of a search warrant." *Id*. at 294, 58 S.W.3d at 395. This court also held in *Cardozo & Paige v. State*, 7 Ark. App. 219, 646 S.W.2d 705 (1983), that when the criminal activity is of a continuing nature, one may utilize his or her common sense regarding the relative staleness of the information on which the warrant is sought. The supreme court in *Gilbert v. State*, 341 Ark. 601, 19 S.W.3d 595 (2000), reiterated and approved of the following rationale adopted in *Cardozo*:

> The likelihood that the evidence sought is still in place is a function not simply of watch and calendar but of variables that do not punch a clock: The character of the crime (chance encounter in the night or regenerating conspiracy?), of the criminal (nomadic or entrenched?), of the thing to be seized (perishable and easily transfer-

able or of enduring utility to its holder?), of the place to be searched (mere criminal forum of convenience or secure operational base?), etc.

*Cardozo*, 7 Ark. App. at 222, 646 S.W.2d at 707.

While the issue in this case is whether probable cause ever arose, and not whether the State allowed the probable cause to become stale or evaporate, the situation is analogous. Probable cause to believe that the child pornography would be present is guided by the common-sense reason that pedophiles tend to retain child pornography for a long period of time. *See Chrobak, supra.* This kind of contraband is not a consumable like drugs but is more in the nature of a personal collection, unlikely to be removed. The trial judge recognized this in his findings when denying the motion to suppress. The totality of the circumstances, and reason, indicate that when an early teenage girl reports that appellant has given her alcohol and she has viewed pictures of naked peers on his computer, one may reasonably infer that this occurred in the recent past. *See also Watson v. State*, 308 Ark. 643, 826 S.W.2d 281 (1992).

The majority is wrong when it states that one must rely on conjecture to decide when the contraband was possessed. Officers must be able to legitimately infer time of criminal activity, but they are not required to have a date certain in order to withstand scrutiny upon review. If we hold the general belief that child pornographers tend to keep their materials for long periods of time, *see Chrobak, supra,* and if we are permitted to use common sense to decide that teenage girls who are consuming alcohol at a man's apartment probably were there within the recent past, we can reasonably infer that criminal activity had occurred and was continuing to occur until the warrant was executed.

I submit that even if the time frame as analyzed by the magistrate was defective, the denial of the motion to suppress would survive under the *Leon* good-faith exception. The basis for the exclusionary rule is not to deter objectively reasonable law enforcement activity, such that in the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. *Id.* The purpose of the exclusionary rule is to punish wrongdoing by an officer. Suppression is appropriate only if the officer was dishonest or reckless in preparing the affidavit or could not have harbored an objectively reasonable belief in the

existence of probable cause. *See Crain v. State*, 78 Ark. App. 153, 79 S.W.3d 406 (2002). In making the probable-cause determination, we are liberal rather than strict. *Bennett v. State*, 345 Ark. 48, 44 S.W.3d 310 (2001). Highly technical attacks on warrants are not favored, *see Watson v. State*, 291 Ark. 358, 724 S.W.2d 478 (1987), and suppression should issue only if a violation is substantial, *see* Ark. R. Crim P. 16.2(e).

I would affirm the denial of the motion to suppress because the officer could harbor an objectively reasonable belief that there was a legitimate inference of time in the affidavit to support probable cause for the issuance of the search warrant. Therefore, I dissent from the majority's conclusion to the contrary. The majority's holdings on the sufficiency of the evidence and speedy trial are correct, however, and as such, I would affirm appellant's convictions.

PITTMAN, J., joins.