Glenn E. GEORGE *v.* STATE of Arkansas

CR 04-12 189 S.W.3d 28

Supreme Court of Arkansas
Opinion delivered June 24, 2004

[Rehearing denied September 9, 2004.*]

---

* HANNAH, J., not participating.

*T.B. Patterson, P.A.*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellee.

R AY THORNTON, Justice. This appeal arises from the conviction of appellant, Glenn George, of nine counts of possessing visual or print medium depicting sexually explicit conduct of children, a violation of Ark. Code Ann. § 5-27-304 (Repl. 1997), a Class C felony. Following a jury trial, a Garland County jury convicted appellant and sentenced him to ninety years' imprisonment and $78,000.00 in fines. On appeal, appellant makes four allegations of error. We affirm the jury's findings, and we reverse the court of appeals.

On April 2, 2001, Detective Paul R. Norris of the Hot Springs Police Department filed an affidavit for a search warrant in which the following facts were alleged. On March 22, 2001, a woman reported that her fourteen-year-old daughter, B.T., told her that appellant provided alcohol to her and to her friends, and that at appellant's apartment, B.T. observed nude photographs of other girls whom she knew to be fourteen or fifteen years old.

During an interview on March 26, 2001, B.T. told Detective Tim Smith that appellant gave her an alcoholic drink, and that she saw nude photographs of her friends about her age on appellant's computer.

B.T.'s friend, J.T., was also interviewed on the same day by Detective Smith. She stated that appellant gave her an alcoholic drink while at appellant's house. J.T. found a video on appellant's computer of her friend, K.T., dancing nude.

At trial, Detective Norris testified that these interviews were conducted on March 26, 2001. Based upon the information obtained in those interviews, Detective Norris prepared the affidavit for a search warrant, which stated:

> In the city of Hot Springs . . . , there is now being concealed certain property, namely: the evidence associated with the producing, directing, or promoting sexual performances and employing or consenting to use of child in sexual performance.

Which are[:] evidentiary items in a sexual exploitation investigation and in direct violation of Arkansas state statute, 5-27-402 and 5-27-403.

And that the facts tending to establish the foregoing grounds for issuance of a search warrant are as follows: that on 03-22-01, [B.T.'s mother] reported her fourteen year old daughter, [B.T.], revealed to her Glenn George provided alcohol to her and other friends and that she observed nude photographs of other girls she knows to be age fourteen or fifteen. [B.T.] was interviewed and stated Glenn George gave her an alcoholic beverage to drink and she saw nude photographs on George's computer of girls she knows to [be] fourteen or fifteen years old. That a friend of [B.T.'s], [J.T.], was also interviewed and stated George provided her with an alcoholic beverage and she found a video on George's computer of friend, [K.T.], dancing nude.

The affidavit for search warrant was signed by Detective Norris and was sworn before Judge Homer Wright with a handwritten date of March 26, 2001.

On March 26, 2001, the search warrant was executed. The warrant stated:

In the city of Hot Springs . . . , there is now being concealed certain property, namely; the evidence associated with the producing, directing, or promoting sexual performances and employing or consenting to use of child in sexual performances.

Which are[:] evidentiary items in a sexual exploitation investigation and in direct violation of Arkansas state statute 5-27-402 and 5-27-403.

And I am satisfied that there is probable cause to believe that the property so described is being concealed on the (premises) (person) above described and that the foregoing grounds for application for issuance of the search warrant exist.

The attached affidavit for search warrant is hereby incorporated by reference.

Detective Norris, Detective Smith, Detective Waterfield, and Lieutenant Hill executed the search warrant at appellant's address on March 26, 2001. The police officers seized appellant's

computer system, which contained digital photographs of "young, nude females in different positions." Each was labeled with the girl's name. The officers also found a video that showed a "young, white female dancing, exposing her breasts and vaginal area." The video was labeled with her name as well. Additionally, the officers seized a camcorder, twelve camcorder discs, sixty video tapes, and four computer discs. The officers also seized sexually explicit photographs, a pistol, drugs, and drug paraphernalia. After leaving a copy of the warrant and a receipt of the items seized at appellant's residence, Detective Norris brought a return slip that contained a list of the items seized pursuant to the warrant.

Appellant was arrested on March 28, 2001. Appellant filed a motion to suppress on the basis that the physical evidence was obtained under a defective search warrant. The suppression hearing was held on April 29, 2002. Defense counsel argued that the affidavit for the search warrant was flawed because "there is nothing in here that provided the court a time frame to determine that there were materials that could be seized in the home at the time the warrant was requested." The State responded by stating, "[A]s to the time problem, the bottom line as a test is whether the affidavit contained enough information to give the magistrate, or in this case you, substantial basis for concluding that probable cause existed. I believe it did."

On May 3, 2002, the trial court denied appellant's motion to suppress and ruled:

> I'm denying the defendant's motion to suppress and upholding the warrant issued in this matter, primarily based on the fact that the grounds alleged were that there — the time was indefinitely stated or not stated on the face of the warrant; and it's my belief that looking at the four corners of the document there is sufficient time frame alleged that the court could feel that there was just cause for the issuance of the warrant. The matters that were being sought were not consumables; they were not items that are normally moved in the course of illegal commerce; there's nothing to indicate that the times would not remain in place for a substantial period of time; they were being kept by the defendant for what appeared to me off the facts alleged for his own — for his personal use, primarily — although the facts did allege that other people were being exposed to these images — and the time frame that is set out on the warrant I think gave me sufficient cause to believe that there was — that this illegal material remained on his premises on the date that the warrant was issued.

On May 15, 2002, appellant's jury trial commenced. Eight girls testified during the State's case-in-chief. C.B. testified that she was fourteen years old when she and appellant began sexual relations. Appellant videotaped their sexual activities. L.J. testified that she was fourteen-and-a-half when she began having a sexual relationship with appellant, and it continued for five years. Through L.J., the State admitted a tape of appellant and another girl, T.D., whom L.J. babysat, having sex while L.J. was in the room. T.D. testified that she and appellant began having sexual relations when she was twelve that continued until she was eighteen. During that time, appellant taped their activities. K.T. testified she had made a movie during which she danced nude. Appellant later found the movie on his computer and kept it. K.T. was fourteen years old at the time the movie was made. K.B. testified that, when she was thirteen years old, she bared her breasts during appellant's filming. B.T. testified that she exposed her breasts in front of appellant's computer and web camera. J.T. testified that she was in pictures with B.T. and K.B., opening their mouths and lifting their shirts. L.H. testified that appellant took nude photos of her in his apartment when she was fourteen. In these pictures, L.H. is posed in a variety of ways that expose her breasts and genitalia. Appellant entitled many of these photographs with sexually explicit captions.

The trial court denied appellant's motion for directed verdict. Appellant rested and renewed his motion, which the trial court denied. The State called T.D., L.H., and L.H's mother during the sentencing phase. The jury found appellant guilty of nine counts of possession of a visual or print medium depicting sexually explicit conduct involving a child. Those nine convictions stem from those counts involving C.B., L.J. and T.D.; T.D., K.T., K.B., B.T., E.T., and L.H. The jury sentenced appellant to ninety years' imprisonment and $78,000.00 in fines.

In a 4-2 decision, the court of appeals reversed and remanded, holding that the trial court should have granted appellant's motion to suppress on the basis that the affidavit for the search warrant did not have a specific time-frame, thereby resulting in an insufficient search warrant under Ark. R. Crim. P. 13.1(b). *See George v. State*, 84 Ark. App. 275, 140 S.W.3d 492 (2003) ("*George I*"). We accepted the State's petition for review. When we grant review following a decision by the court of

appeals, we review the case as though it had been originally filed with this court. *See Baird v. State*, 357 Ark. 508, 182 S.W.3d 136 (2004).

Appellant argues four points on appeal. First, he argues that the trial court erred in denying the motion to suppress the evidence because of an invalid warrant. Second, he contends that the trial court erred in denying his motion to suppress because additional evidence was seized. Third, he argues that the trial court erred in denying his motion to dismiss the charges based upon a speedy-trial violation. Fourth, he challenges the sufficiency of the evidence on three counts.

The preservation of appellant's right against double jeopardy requires that we consider his challenge to the sufficiency of the evidence before we consider alleged trial error even though the issue was not presented as the first issue on appeal. *Grillot v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003).

Appellant argues that the trial court erred in denying his motion for directed verdict as to the three counts involving the three girls who exposed their breasts in front of appellant's web camera or still camera. Specifically, he contends that this behavior does not fall within the statutory definition of "sexual conduct" defined in Ark. Code Ann. § 5-27-401(3) (Repl. 1997).

It is well settled that we treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Jones v. State*, 357 Ark. 545, 182 S.W.3d 485 (2004). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Id.* On appeal, we view the evidence in the light most favorable to the State, considering only that evidence that supports the verdict. *Id.*

Arkansas Code Annotated § 5-27-304 prohibits the possession of visual or print medium depicting a child engaging sexually explicit conduct. The statute provides in pertinent part:

> (a) No person, with knowledge of the character of the visual or print medium involved, shall do any of the following:

* * *

(2) Knowingly solicit, receive, purchase, exchange, possess, view, distribute, or control any visual or print medium depicting a child participating or engaging in sexually explicit conduct.

*Id.* Arkansas Code Annotated § 5-27-401(3) (Repl. 1997) states, " 'Sexual conduct' means . . . lewd exhibition of the genitals or pubic area of any person or the breasts of a female[.]" *Id. See also* Ark. Code Ann. § 5-27-302(2)(E)(i-ii) (Repl. 1997).

■ The issue then is whether the photographs showing the breasts of these three girls constitute a "lewd exhibition" under Ark. Code Ann. § 5-27-401(3). In *Cummings v. State,* 353 Ark. 618, 110 S.W.3d 272 (2003), we held that there was sufficient evidence to support Cummings's conviction of permitting his child to engage in sexually explicit conduct for use in visual or print medium, a violation of Ark. Code Ann. § 5-27-303(b). In *Cummings,* we cited with approval the court of appeal's decision of *Gabrion v. State,* 73 Ark. App. 170, 42 S.W.3d 572 (2001), where we stated:

> Though "lewd" is not defined in the Arkansas Code, the court of appeals has stated that "lewd" is a common word with an ordinary meaning. *See Gabrion v. State,* 73 Ark. App. 170, 173, 42 S.W.3d 572 (2001). *Black's Law Dictionary* defines "lewd" as "[o]bscene or indecent; tending to moral impurity or wantonness." 919 (7th ed. 1999).

> In *Gabrion,* the appellant was convicted of two counts of pandering or possessing a visual or print medium depicting sexually explicit conduct involving a child. In that case, two individuals stated that Gabrion possessed videotapes containing child pornography. 73 Ark. App. at 172. Gabrion admitted that he had made the videotapes of the girls, whom he knew to be fourteen years old. *Id.* "On the tapes, Gabrion can be seen and heard directing both girls to undress and assume suggestive poses that showed off their breasts and buttocks." *Id.* Further, the court of appeals noted that "[t]he tapes contained full frontal nudity of both young girls as they donned costumes that Gabrion had provided for them." *Id.* Gabrion argued that the videotapes were not lewd. The court of appeals concluded that, in arguing that the images on the videotapes were not lewd, Gabrion wanted the court to "ignore the fact that the girls were underage and consider the same acts as if they were performed by adults." *Id.* at 172; *see also United States v. Dost,* 636 F.

Supp. 828, 832 (S.D. Cal 1986), aff'd, 812 F.2d 1239 (9th Cir.), cert. denied, 484 U.S. 856 (1987) ("Because of the sexual innocence of children, that which constitutes 'lascivious exhibition' of a child's genitals will be different from that of a 'lascivious or lewd exhibition' of an adult's genitals.") In addition, the court of appeals stated that even if the scenes depicted on the videotapes were not "lewd," the scenes "were at the very least indecent and, therefore, 'lewd' as contemplated by Ark. Code Ann. § 5-27-401(3)." *Id.*

■ Similarly, in the present case, the scenes depicted in the videotapes show full frontal nudity of C.G. One of the photographs featured on the website partially shows C.G.'s breast; another photograph shows C.G.'s pubic area.

*Cummings, supra* (footnote omitted).

In light of this well-established precedent, we turn our attention to appellant's sufficiency challenge. At trial, appellant made the following motion for directed verdict at the close of the State's case-in-chief:

[A]s to each of the counts that involve these young girls just baring their breasts for the video camera. At least two of them testified that they took them, and there was nothing to show that [appellant] knowingly possessed the items, even if they met the definition of sexual behavior. I don't think they do, because they don't qualify as a lewd exhibition. It's the same sort of flashing behavior you see maybe in New Orleans for the Mardi Gras where they toss jewels and silly things like that. It's more akin to mooning [than] to lewd behavior.

Appellant's argument, however, is misplaced. These photographs at issue were found on videoclip on two CD-ROMs, which were admitted into evidence as State's Exhibit A and B. The still images from these two CD-ROMs were admitted as State's Exhibits E, F, and J.

State's Exhibit E contains a picture entitled "Picture 37," which displays B.T.'s bare breasts. Other pictures included in State's Exhibit E show B.T. posing provocatively. State's Exhibit F contains a picture that appellant entitled "[B.T.'s] Tits," another picture of B.T.'s bare breasts. Other images in State's Exhibit F show B.T. in various lewd poses. State's Exhibit J contains an image entitled, "Picture 166," of B.T., J.T., and K.B. baring their breasts. Other photographs in State's Exhibit J depict the girls holding their mouths open and making suggestive gestures at the camera.

J.T., B.T., and K.B. testified at trial. J.T. testified that she, B.T., and K.B. were in pictures in which they opened their mouths, and appellant entitled the picture, "Goodbigdicksuckers." J.T. also testified that she, B.T., and K.B. were in another picture, which is Picture 166, where they lifted their shirts. J.T. further stated that these pictures were taken when she was fourteen years old. B.T. testified that she exposed her breasts in front of appellant's computer and web camera. She further testified that she was the girl depicted in Picture 37 in State's Exhibit E. B.T. stated that she was born on July 12, 1986, and that the picture was taken on August 10, 2000. K.B. testified that, when she was thirteen years old, she bared her breasts for the camera while appellant videotaped her. She further testified that appellant filmed her several times.

We hold that these images in appellant's possession constitute "sexually explicit conduct" under Ark. Code Ann. § 5-27-304. These images concern children, as in *Gabrion, supra*, and contain the bare breasts of fourteen-year-old girls, which constitute a "lewd exhibition" under Ark. Code Ann. § 5-27-401(3). Therefore, based upon our holding in *Cummings, supra*, we conclude that there was sufficient evidence from which the jury could convict appellant of "possessing visual or print medium depicting sexually explicit conduct" under Ark. Code Ann. § 5-27-304.

Appellant also argues that the trial court erred in denying his motion to suppress the evidence because of an invalid warrant. Specifically, appellant makes four arguments: (1) that the warrant had an inadequate reference to time; (2) that the warrant contained an inadequate description of the property to be seized; (3) that the warrant contained a number of irregularities; and (4) that additional property not described in the warrant was seized by. the police officers.

Our standard of review for a trial court's decision to grant or deny a motion to suppress requires us to make an independent determination based on the totality of the circumstances, to review findings of historical facts for clear error, and to determine whether those facts give rise to reasonable suspicion or probable cause, while giving due weight to inferences drawn by the trial court. *See Davis v. State,* 351 Ark. 406, 94 S.W.3d 892 (2003). Our review of the probable cause for the issuance of the warrant is confined to the information contained in the affidavit as

that was the only information before the magistrate when he issued the warrant. *Herrington v. State*, 287 Ark. 228, 697 S.W.2d 899 (1985) (citing *Baxter v. State*, 262 Ark. 303, 556 S.W.2d 428 (1977)).

Rule 13.1 of the Arkansas Rules of Criminal Procedure sets out the requirements for the issuance of a warrant. Rule 13.1(b) provides:

> The application for a search warrant shall describe with particularity the persons or places to be searched and the persons or things to be seized, and shall be supported by one (1) or more affidavits or recorded testimony under oath before a judicial officer particularly setting forth the facts and circumstances tending to show that such persons or things are in the places, or the things are in possession of the person, to be searched. If an affidavit or testimony is based in whole or in part on hearsay, the affiant or witness shall set forth particular facts bearing on the informant's reliability and shall disclose, as far as practicable, the means by which the information was obtained. An affidavit or testimony *is sufficient if it describes circumstances establishing reasonable cause to believe that things subject to seizure will be found in a particular place.* Failure of the affidavit or testimony to establish the veracity and bases of knowledge of persons providing information to the affiant shall not require that the application be denied, if the affidavit or testimony viewed as a whole, provides a substantial basis for a finding of reasonable cause to believe that things subject to seizure will be found in a particular place.

*Id.* (emphasis added).

We outlined the test for the adequacy of an affidavit in *Coggin v. State*, 356 Ark. 424, 156 S.W.3d 712 (2004), where we stated:

> [T]he task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying the hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of the reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.

*Id.*

Appellant makes the argument that the warrant is inadequate because of an insufficient reference to time. Specifically, he contends that the affidavit contains the date that B.T.'s mother called and reported the crime, but it does not contain the time that he possessed these materials.

In *Herrington, supra,* we cited *Collins v. State,* 280 Ark. 453, 658 S.W.2d 877 (1983), for the proposition that a time-reference must be included in the affidavit supporting a search warrant. We said:

> [W]hile inferences the magistrate may draw are those which a reasonable person could draw, certain basic information must exist to support an inference. All the magistrate had in this case was the affidavit and the information which we have recited. We find one defect that cannot be cured. The affidavit mentions no time during which the criminal activity occurred. . . .
>
> *It is the uniform rule that some mention of time must be included in the affidavit for a search warrant. The only softening of this position occurs when time can be inferred from the information in the affidavit. For example, where an affidavit recited that the contraband was "now" in the suspect's possession and that the search was urgent, that was found to be adequate to satisfy the time requirement* . . . In another case where the affidavit said that contraband was "recently" seen, coupled with the use of present tense as to the location of the contraband, that was held to be sufficient. . . . Time is crucial because a magistrate must know that criminal activity or contraband exists where the search is to be conducted at the time of the issuance of the warrant. . . . That is not an unreasonable nor technical demand of the law.

*Herrington, supra* (emphasis added). In *Herrington,* we held that, because of the affidavit's failure to specify any reference to time, the affidavit did not provide sufficient information upon which a probable cause determination can be made. *Id.*

Appellant argues that "[w]hile the affidavit tells when the information was relayed to the officer, it has absolutely nothing to show when the informants' observations were made." Appellant's argument is wrong. The present case is distinguishable from *Herrington, supra,* because the affidavit *does* contain a sufficient reference to time. The affidavit for a search warrant averred that, on March 22, 2001, B.T.'s mother reported that B.T., age fourteen, revealed to her that she observed nude photographs of other

girls whom she knew to be fourteen or fifteen years old. Based upon an interview with B.T. and B.T.'s friend, J.T., Detective Norris prepared an affidavit reciting the date of March 22, 2001. On the basis of the affidavit, the magistrate was able to make a practical, common sense decision that there was a fair probability that appellant possessed these materials, and the search warrant was executed on March 26, 2001. *See Coggin, supra.*

Even if there had been an insufficient time-frame reference in the affidavit, appellant's argument still would fail. Under our good-faith exception articulated in *Herrington, supra,* we look to the four corners of the affidavit to determine if we can establish with certainty the time during which the criminal activity was observed. *Id.* (citing *United States v. Leon,* 468 U.S. 897 (1984)). If the time can be inferred in this manner, then the police officer's objective good faith reliance on the magistrate's assessment will cure the omission. *Herrington, supra.*

In reviewing the good-faith exception to the exclusionary rule, there are four errors that an officer's good faith cannot cure. Those are: (1) when the magistrate is misled by information the affiant knew was false; (2) if the magistrate wholly abandons his detached and neutral role; (3) when the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when a warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid. *Herrington, supra* (citing *United States v. Leon,* 468 U.S. 897 (1984)).

The court of appeals held in *George I, supra,* that the good-faith exception did not apply because the "reliance on the warrant by the police officers executing the search warrant was unreasonable." *Id.* We disagree with the court of appeals's holding that the police officers' reliance upon the warrant was unreasonable. Here, in our examination of the four corners of the affidavit, it appears that appellant's criminal activity of possessing print medium depicting sexually explicit conduct of minors was present at the time the affidavit was signed on March 26, 2001. Additionally, under *Collins, supra,* we observe the fact that the affidavit contains the word *now.* The affidavit states that "[t]here is *now* being concealed . . . evidentiary items in a sexual exploitation investigation and in direct violation of Arkansas state statute 5-27-402 and 5-27-403" (emphasis added). Under *Herrington,*

*supra*, and *Collins*, *supra*, the March 22, 2001, date, coupled with the use of present tense as to the location of the sexually explicit materials, is clearly sufficient to satisfy the time requirement needed for application of the good-faith exception.

We also agree with the State's position that, in the context of child pornography cases, the nature of the crime itself should be an additional reason to support the magistrate's conclusion that appellant would continue to be in possession of sexually explicit photographs of children on March 26, 2001. In *Chrobak v. State*, 75 Ark. App. 281, 58 S.W.3d 387 (2001), the court of appeals affirmed the denial of Chrobak's motion to suppress on the good-faith exception to the exclusionary rule in a case involving Chrobak's transmittal of pornographic images of children from his home computer. In *Chrobak*, the court of appeals was persuaded by the reasoning of the decision of the Eighth Circuit Court of Appeals in *United States v. Rugh*, 968 F.2d 750 (8th Cir. 1992), which held that other factors must be considered, including the nature of the criminal activity [child pornography] and the kind of property subject to search, in addition to time. *Chrobak, supra.* The Eighth Circuit determined that the "continuous nature of an ongoing child-pornography ring and the tendency of pedophiles to retain child pornography for a long period of time minimized the lapse of time between the information in the affidavit and the execution of a search warrant." *Chrobak, supra. See also United States v. Chrobak*, 289 F.3d 1043 (8th Cir. 2002) (holding that the warrant was supported by probable cause because a *"magistrate judge could find a fair probability that Chrobak had child pornography at his home three months after [the attorney general's interception of pornographic images]"*) (emphasis added); *United States v. Horn*, 187 F.3d 781 (8th Cir. 1999) (holding the information provide in the affidavit was not stale because Horn was likely to still be in possession of child pornography three or four months later).

In the present case, the nature of appellant's criminal activity is similar to that in *Chrobak, supra.* Here, appellant possessed numerous digital and still images of girls approximately fourteen years of age posing nude and exposing their breasts and genitalia. This information was provided to detectives by the girls themselves. Based upon the nature of the criminal activity in this case, appellant was likely to have possessed these materials at the

time the search warrant was executed. Thus, the magistrate had a substantial basis for concluding that probable cause existed.

 Appellant further argues that the warrant is invalid because the warrant contained an inadequate description of the property to be seized. Arkansas Rule of Criminal Procedure 13.2 provides for the contents of the search warrant. Rule 13.2(b) provides that the warrant shall describe with particularity "the persons or things constituting the object of the search and authorized to be seized[.]" Ark. R. Crim. P. 13.2(b)(iv). Here, the affidavit properly identified "evidence associated with the producing, directing, or promoting sexual performances and employing or consenting to [the] use of child in sexual performances." This evidence included the "nude photographs" and "video" seen by B.T. and J.T.

 Appellant also argues that items other than his personal computer, particularly the video tapes, camcorder disks, gun, and drug paraphernalia, were unlawfully seized. Appellant is mistaken. Under Ark. R. Crim. P. 13.3(d), "[i]f in the course of such search, the officer discovers things not specified in the warrant which he reasonably believes to be subject to seizure, he may also take possession of things so discovered." *Id.* Based upon Ark. R. Crim. P. 13.3(d), the officers properly seized the additional tapes, disks, gun, and drug paraphernalia.

 Appellant makes an additional argument concerning various technical irregularities, such as the judge's identity, the return of the warrant, and others. However, the trial court did not rule on these matters. We agree with the State that appellant is barred from raising this argument on appeal because he failed to obtain a ruling. *Vickers v. State,* 313 Ark. 64, 852 S.W.2d 787 (1993) (holding argument not preserved where trial court reserved a ruling initially and appellant subsequently failed to obtain a ruling).

 In summary, we conclude that appellant's four arguments relating to the adequacy of the warrant are without merit. Therefore, based upon our standard of review regarding the adequacy of a warrant, as well as the foregoing analysis, we hold that the magistrate had a substantial basis for concluding that probable cause existed. *Coggin, supra.* Accordingly, the trial court did not err in denying appellant's motion to suppress.

For his remaining point on appeal, appellant argues that the trial court denied his motion to dismiss the charges for violation of the speedy-trial rule. Specifically, he contends that a speedy-trial violation occurred because his trial began thirteen-and-one-half months after his arrest.

Arkansas Rule of Criminal Procedure 28 governs speedy trial. Any defendant charged in circuit court shall be entitled to have the charge dismissed with an absolute bar to prosecution if not brought to trial within twelve months from either the date the charge is filed or the date of arrest, whichever is earlier. *See* Ark. R. Crim. P. 28.1(c) and Ark. R. Crim. P. 28.2(a). Certain periods of time are excluded in computing the time for trial. *See* Ark. R. Crim. P. 28.3. We have repeatedly held that delays resulting from continuances requested by the defendant or defense counsel are excluded from the calculation of the speedy-trial period. *Romes v. State*, 356 Ark. 26, 144 S.W.3d 750 (2004).

Here, appellant was arrested on March 28, 2001, and his trial began on May 15, 2002. However, appellant moved for a continuance on January 10, 2002, and the trial court granted the continuance until May 15, 2002. The additional forty-eight days beyond the twelve-month period were during this continuance, and under *Romes, supra*, all of the time from January 10, 2002, until May 15, 2002, should be excluded from the calculation of the speedy-trial period. For these reasons, we hold that a speedy-trial violation did not occur.

Accordingly, we affirm the jury's conviction and sentence of appellant, and we reverse the holding of the court of appeals.

HANNAH, J., not participating.