Cite as 2019 Ark. App. 408

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR-18-1019

| | | |
|---|---|---|
| | | **Opinion Delivered** September 25, 2019 |
| GERALD LEE GROOMES | | |
| | APPELLANT | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26CR-17-295] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE JOHN HOMER WRIGHT, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

## BRANDON J. HARRISON, Judge

A Garland County Circuit Court jury found Gerald Lee Groomes guilty of twenty counts of distributing, possessing, or viewing matter depicting sexually explicit conduct involving a child. On appeal, he argues that some of the images do not depict sexually explicit conduct, that there was insufficient evidence that he knowingly viewed or possessed prohibited material, and that his convictions violate constitutional prohibitions on double jeopardy and cruel and unusual punishment. We affirm.

In May 2017, Groomes was charged with thirty counts of distributing, possessing, or viewing matter depicting sexually explicit conduct involving a child.[1] At a jury trial in May 2018, Special Agent Michael Hendrix, an employee of the Arkansas Attorney General's Office Special Investigations Division, testified that he works in the cybercrimes unit and

---

[1]The State later nolle prossed ten counts pursuant to a negotiated plea agreement.

primarily investigated child-exploitation cases. He explained that as an investigator, he has specialized tools that monitor peer-to-peer networks, which allow the transfer of digital files over the internet from one computer to another. These tools focus on anyone who offers to participate in the sharing of child-exploitation material and makes such files public. The system identifies that user's IP address, which can provide the user's geolocation, service provider, and physical address or name assigned to the account.

Hendrix testified that on 5 October 2016, he connected with IP address 99.43.27.24; that user was offering to participate in the sharing of child pornography. Hendrix's computer connected with that user's computer and was able to download 185 files of alleged child-exploitation material between October 5 and 8 January 2017. On 19 March 2017, Hendrix connected with the same IP address and downloaded one additional file of alleged child pornography. At that point, Hendrix assigned the case to another agent to initiate the legal process of obtaining a subpoena for that user's service provider and to proceed with the case.

On cross-examination, Hendrix confirmed that the IP address he had connected with belonged to Groomes's home computer. He also said that Groomes used a program called uTorrent to download and share the images. Hendrix agreed that he cannot tell if a person opened a file on his or her own computer, but he can show that a file was downloaded and stored in a shared folder.

Drew Evans testified that in January 2017, he had been a special agent with the Arkansas Attorney General's Office and worked in the cybercrimes unit. Evans took over Hendrix's investigation and identified approximately 280 files containing suspected child

2

pornography in the files he received from Hendrix. Evans personally viewed each image and identified it as sexual-exploitation material. He subpoenaed AT&T to obtain the subscriber information for the IP address; the subscriber was identified as Gerald Groomes. On 1 March 2017, Evans and Agent Jeremiah Terrell went to Groomes's address and confirmed that Groomes had lived there by himself since 2011. On March 19, with Groomes's computer still actively sharing child-exploitation material, Evans began drafting a search warrant. The warrant was executed on March 23, and agents seized Groomes's computer and hard drive. Special Agent Chris Cone, a computer-forensics expert, examined the evidence at the scene and confirmed the presence of explicit images, so Groomes was arrested.

Cone testified that agents found a desktop computer that was powered off in Groomes's residence. Cone explained that he removed the side panel, disconnected the power and data-connection cables on the back of the hard drive, and connected them to his own laptop, which allowed him to read the information contained on the hard drive. He was able to quickly determine that file-sharing software was installed on the hard drive and that there were "files of interest to this investigation" on the hard drive. He then stopped his examination and transported the hard drive to his lab in Little Rock, where he created an "acquired forensic image," meaning a copy, of the hard drive so he could work from the copy without jeopardizing the original. Cone applied a filter that allowed him to view all the still images or videos containing child pornography regardless of where those images were stored on the hard drive. Cone also determined that the hard drive's current Windows operating system had been installed on 1 March 2017, twenty-two days before the search

3

warrant was executed, and contained one user-created account named "great." Cone confirmed the presence of file-sharing software, specifically uTorrent, on Groomes's computer, and explained that uTorrent stores data in the user account associated with the software—in this case the "great" account. Cone described that within each user account there is a hidden folder named "AppData," which is

> a folder that is just placed there by the operating system and it is typically hidden from the user's view. It's not to say that a user couldn't make changes to the system and look at it, but by default it's hidden.
>
> And within the AppData folder are three additional folders and they're labeled "Local, LocalLow, and Roaming." And in the Roaming folder with uTorrent, there's an entry for the uTorrent software. And not just with uTorrent, but with a lot of programs that you install on a computer, they make entries into the Local or the Roaming and sometimes LocalLow folder with an AppData. And it's just a mechanism for Microsoft Windows to store settings and features and preferences about that program that's installed on the system.

Cone explained that "when a user is interacting with folders and files and they double-click a folder or they double-click a file and they open it, a link file is created in the—in an area within AppData for a recent file."

In this case, Cone identified six files within the uTorrent folder with names that, in his experience, are consistent with child sexual-abuse material: "LS Star," "LS Little Guests," "LS Land Issue 18 Alien Stars," "LS Barbie," "Lolita Magazine 8YO," and "Flower Power 7YO." He said that a "shortcut" link to the uTorrent software had been "pinned" to the computer's task bar by the "great" Windows user account. Cone also found names of video files associated with VLC media-player software in the AppData folder corresponding to VLC; the most recently played videos included "9YO Girl Masturbate on Webcam and Piss on Floor," "Amber 7YO Bondage," and "PTHC 4YO, 8YO, 11YO Girls Compilation."

4

And finally, Cone identified numerous recent web-browser searches, including "Teen Girls Shower," "Teen Girls Needing a Cigarette," and "Pure Nudism Teens 14." He confirmed that the "great" user account was associated with Groomes and that he (Cone) obtained evidence showing Groomes's computer "interacting with a number of different files and folders that are or were in the downloads folder with names consistent with child sexual-abuse material." He also said that there was some residual information still on the computer from before the most recent March 1 Windows installation and that the residual information also showed access to files with names indicative of child sexual-abuse material.

The State introduced and played for the jury a CD containing a representative sample of the images found on Groomes's computer, one image for each of the twenty counts of which Groomes was charged. Cone explained that some of those twenty images were in a download folder, some were from the recycle bin, and some were deleted files.

After the State rested, the defense moved for a directed verdict on all counts on the ground that the State had failed to establish that Groomes knowingly possessed the material in question. The defense argued that

> Special Agent Cones [sic] had gotten into the hard drive, not the regular accessible desktop information that we're readily use [sic] to, and that there was [an] app data file that is created by the computer itself. I think that establishes that even Mr. Groomes wouldn't have been aware that even existed once it had been deleted. I think there was testimony that a number of those items had been deleted, some of those things also residual from the computer, so that they failed to establish that he knowingly still possessed those items.

In addition, on counts two, three, four, twelve, and thirteen, the defense moved for a directed verdict on the ground that the images failed to show a child engaging in any sexually explicit conduct. The defense asserted, "I think the image itself appears to be either a

5

reinactment [sic] or an actual image from a—like a nudist camp or nudist colony type of conduct.  Nudity in and of itself is not sexual [sic] explicit, so I think they have to establish that it's sexually explicit under the definitions established in the jury instructions."  The court denied the motions, and the defense rested without presenting additional evidence.  Groomes was found guilty on all twenty counts and sentenced to three years' imprisonment on each count, to run consecutively.

Arkansas law treats motions for directed verdict as challenges to the sufficiency of the evidence.  *Holloway v. State*, 2011 Ark. App. 52.  When the sufficiency of the evidence is challenged in a criminal conviction, our court views the evidence in the light most favorable to the verdict and considers only the evidence supporting it.  *Adkins v. State*, 371 Ark. 159, 264 S.W.3d 523 (2007).  We will affirm if the finding of guilt is supported by substantial evidence.  *Id.*  Substantial evidence is evidence of such sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture.  *Fernandez v. State*, 2010 Ark. 148, 362 S.W.3d 905.

I.  *Sexually Explicit Conduct*

A person commits the offense of distributing, possessing, or viewing matter depicting sexually explicit conduct involving a child if the person knowingly

(1) Receives for the purpose of selling or knowingly sells, procures, manufactures, gives, provides, lends, trades, mails, delivers, transfers, publishes, distributes, circulates, disseminates, presents, exhibits, advertises, offers, or agrees to offer through any means, including the Internet, any photograph, film, videotape, computer program or file, video game, or any other reproduction or reconstruction that depicts a child or incorporates the image of a child engaging in sexually explicit conduct; or

(2) Possesses or views through any means, including on the Internet, any photograph, film, videotape, computer program or file, computer-generated

6

image, video game, or any other reproduction that depicts a child or incorporates the image of a child engaging in sexually explicit conduct.

Ark. Code Ann. § 5-27-602(a) (Repl. 2013). Sexually explicit conduct is defined as actual or simulated sexual intercourse, deviate sexual activity, bestiality, masturbation, sadomasochistic abuse for the purpose of sexual stimulation, or lewd exhibition of the genitals or pubic area of any person or breast of a female. Ark. Code Ann. § 5-27-601(15). Whether an image constitutes a "lewd exhibition" is a factual question for the jury. *Cummings v. State*, 353 Ark. 618, 110 S.W.3d 272 (2003). Our supreme court has noted that "lewd" is a common word with an ordinary meaning and that *Black's Law Dictionary* defines "lewd" as "obscene or indecent; tending to moral impurity or wantonness." *Id*. at 628–29, 110 S.W.3d at 278 (citing *Gabrion v. State*, 73 Ark. App. 170, 42 S.W.3d 572 (2001)).

Groomes contends that images two, three, four, twelve, and thirteen cannot fit any of the definitions of sexually explicit conduct listed above except possibly lewd exhibition. Relying heavily on a Massachusetts Supreme Court case, *Commonwealth v. Rex*, 11 N.E.3d 1060 (Mass. 2014), Groomes argues that nudity alone is not enough to constitute lewdness, that there is "nothing remotely sexual, either implicitly or explicitly, about the images," and that "[n]othing about the images suggests that they were derived from the sexual exploitation of the subjects shown therein, such that their possession or viewing would result in the continuing victimization of those subjects." Instead, he contends, the images show nude children in "ordinary non-sexual settings," such as "two nude females standing with a volleyball" and "a nude female holding a jump rope." He concludes that the images are

7

not a "lewd exhibition" and thus do not depict "sexually explicit conduct" as defined in the statute.

The State responds that based on our supreme court's holdings in *Cummings*, *supra*, and *George v. State*, 358 Ark. 269, 189 S.W.3d 28 (2004), sufficient evidence of "lewd exhibition" existed. In *Cummings*, which involved nude photographs and videos of a thirteen-year-old girl that the appellant claimed were for modeling purposes, the supreme court cited with approval language from a California federal district court: "Because of the sexual innocence of children, that which constitutes 'lascivious exhibition' of a child's genitals will be different from that of a 'lascivious or lewd exhibition' of an adult's genitals." *U.S. v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986), *aff'd*, 812 F.2d 1239 (9th Cir.), *cert. denied*, 484 U.S. 856 (1987). Our supreme court also noted that a determination of lewdness is ultimately based on whether the combined effect of the visual depiction, including the age of the minor, setting, attire, pose, and emphasis on the genitals, is designed to elicit a sexual response in a pedophile viewer. *Cummings*, 353 Ark. at 629 n.1, 110 S.W.3d at 278 n.1. *See also George*, 358 Ark. at 282, 189 S.W.3d at 35 (holding that photographs showing bare breasts of fourteen-year-old girls constituted "lewd exhibition"). The State also asserts that the context in which the images were found, including the file and video names, "lend more strength to the assertion that these images were possessed for lewd purposes." *See Whiteside v. State*, 2010 Ark. App. 232, at 4.

Having viewed the challenged images ourselves and having applied our standard of review to the record as a whole, we hold that sufficient evidence supports the jury's verdict that the five images depicted sexually explicit conduct. The *Rex* case relied on by Groomes

is distinguishable in several ways; first, the photographs at issue in that case were not found with other photographs that clearly showed sexually explicit conduct. Two, the *Rex* court was determining whether probable cause existed to issue an indictment, not whether sufficient evidence existed to support a jury verdict. And importantly, the *Rex* court conducted a de novo review of the challenged pictures to ensure that "the grand jurors 'have not encroached on expression protected by the First Amendment.'" 11 N.E.3d at 1066 (quoting *Commonwealth v. Sullivan*, 972 N.E.2d 476, 484 (Mass. App. Ct. 2012)). While Groomes encourages this court to also perform a de novo review, our standard of review for sufficiency of the evidence is whether the jury's verdict is supported by substantial evidence. Under that standard, we affirm.[2]

## II. *Knowingly Viewed or Possessed Prohibited Material*

On this point, Groomes argues in part that the State failed to prove that any of the persons in the twenty images were actual children under seventeen years of age. However, this is not the argument he made to the circuit court. In his directed-verdict motion, he argued that some of the images had been deleted and that Groomes had not been aware that those images still existed once deleted; thus, the State "failed to establish that he knowingly

[2]We acknowledge that the *George* opinion included the statement: "We hold that these images in appellant's possession constitute 'sexually explicit conduct[.]'" 358 Ark. at 282, 189 S.W.3d at 35. However, two sentences later, the court stated, "Therefore, based upon our holding in *Cummings*, *supra*, we conclude that there was sufficient evidence from which the jury could convict appellant of 'possessing visual or print medium depicting sexually explicit conduct[.]'" *Id.* at 282, 189 S.W.3d at 35–36. Groomes cites the former statement from *George* in urging this court to employ a de novo standard of review rather than deciding whether the jury had sufficient reasons to determine that the challenged images depicted lewd exhibition as it was instructed to do at trial; however, we remain convinced that the substantial-evidence standard is the correct standard.

still possessed those items." Parties are bound by the scope of their directed-verdict motions and cannot change their grounds on appeal. *See Warren v. State*, 2019 Ark. App. 33, 567 S.W.3d 105; *Harjo v. State*, 2017 Ark. App. 337, 522 S.W.3d 839. Thus, we will not address this portion of Groomes's argument.

Groomes also argues that the State failed to prove that he actually possessed or viewed the images:

> The uncontroverted evidence showed that the "AppData" folder where the twenty images were found was automatically created by Mr. Groomes' [sic] computer and was not accessible to the average computer user. There was no evidence that Mr. Groomes was capable of accessing the "AppData" folder or even knew it existed. Accordingly, there was no evidence that the twenty images were ever within Mr. Groomes' [sic] "dominion and control," and thus, no evidence that they were in his possession.

The State counters that Groomes's computer was "rife with evidence that he possessed and viewed the 20 images." The State notes that all the file creations and deletions were associated with the "great" user account, which was identified as Groomes's account, and Groomes's computer had the uTorrent software installed and pinned to his task bar for easy access. Within the AppData folder for uTorrent were files with names consistent with sexually explicit material involving children; other files and folders with similar names were also found in other locations within his computer. The State denies the files were merely "hidden away" on Groomes's computer; instead, they were "sought out, bookmarked, downloaded, saved, clicked on, viewed, and shared." Thus, there was no question that Groomes possessed and viewed the images.

We hold that substantial evidence supports the finding that Groomes possessed the twenty images. In addition to the reasons cited by the State, we note that according to

10

Cone's testimony, a folder is not created within AppData unless and until a user interacts with a folder or file. That means the AppData files on Groomes's computer were not created in a vacuum but instead were the result of his actions of viewing, playing, downloading, or searching for sexually explicit images involving children.

## III. *Constitutional Arguments*

Finally, Groomes contends that his convictions violate constitutional prohibitions on double jeopardy and cruel and unusual punishment. However, neither of these arguments was presented to the circuit court below, so we need not address them. *See Brown v. State*, 374 Ark. 324, 287 S.W.3d 587 (2008) (holding that an Eighth Amendment argument is not preserved for appellate review when appellant did not present an objection to his sentence to the circuit court); *State v. Montague*, 341 Ark. 144, 14 S.W.3d 867 (2000) (holding that when the argument of double jeopardy is not raised below, the appellate court cannot consider that argument on direct appeal).

Affirmed.

GRUBER, C.J., and MURPHY, J., agree.

*Ben Motal*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Chris R. Warthen*, Ass't Att'y Gen., for appellee.

11