Cite as 2025 Ark. App. 164

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CR-24-180

| | | |
|---|---|---|
| KEITH GREGORY | | Opinion Delivered  March 12, 2025 |
| | APPELLANT | APPEAL FROM THE CRAWFORD COUNTY CIRCUIT COURT [NO. 17CR-23-84] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE MARC MCCUNE, JUDGE |
| | APPELLEE | AFFIRMED |

**WENDY SCHOLTENS WOOD, Judge**

Keith Gregory appeals the Crawford County sentencing order convicting him of twenty-one counts of possession of matters depicting sexually explicit conduct involving a child and seventeen counts of video voyeurism and sentencing him to an aggregate of 198 years in prison and $380,000 in fines. On appeal, Gregory challenges the sufficiency of the evidence to support his convictions for possession of matters depicting sexually explicit conduct involving a child and contends that the circuit court erred in allowing irrelevant evidence regarding the effect of the allegations on the victims. We affirm.

A jury trial took place on November 20, 2023. The testimony at trial revealed that MV1, Gregory's fifteen-year-old daughter who lived with him, was at home with her boyfriend and a friend on January 3, 2023, while Gregory was at work. When her friend needed a phone charger, MV1 went into Gregory's bedroom to find one. MV1 found a

charger connected to an unlocked old phone of Gregory's underneath a pillow on his bed. She scrolled though the photos on the camera roll and found a "naked picture of [herself] in [her] shower with [her] face cut off." Using her phone, MV1 took a picture of the photograph she found on Gregory's phone. MV1 and her boyfriend left her house, called his mom, and went to his house. MV1 disclosed to her boyfriend's stepdad what they found, and he contacted the police.

The Alma Police Department initiated an investigation and seized five phones and a laptop from Gregory's house. The forensic examination of the items revealed seventeen videos and four photographs involving six minor victims. None of the victims knew they were being recorded by Gregory or gave their consent to be recorded. The victims were recorded through a hole in MV1's shower, which remained after the bathtub faucet had been removed during renovations and had never been replaced.[1] The hole was a few inches above the edge of the bathtub. Gregory's bathroom was on the other side of the hole, and a portion of the wall behind his toilet was cut out revealing the hole. From the hole, Gregory had a view of both MV1's shower and her toilet.

MV1 identified herself in five videos and one photo found in Gregory's possession. The images show MV1, who was naked, showering and shaving her legs. Her breasts, buttocks, and genitals are visible in the videos and the photo.

---

[1]MV1 testified that they had moved into the home the summer before she found the naked photo of herself on Gregory's phone and that the renovations occurred a few months before she found the photo.

MV2 testified that she was sixteen years old when the videos were found. She identified herself in two videos, which show her using the toilet, removing her bra, and changing her clothes. MV2's buttocks and breasts are visible in the videos.

MV3 was also sixteen years old when the videos were found. MV3 identified herself in one video, which shows her using the bathroom and changing clothes.

MV4 was seventeen years old when the images were found. She identified herself in two videos, which show her showering. Her breasts, buttocks, and genitals are visible in both videos.

MV5 was fifteen years old when the videos were found. She identified herself on one video, which shows her showering and shaving her pubic area.

MV6, who was fifteen years old when the videos were found, had spent the night at MV1's home over one hundred times. MV6 identified herself in eight videos and three images. The videos show her naked, showering, and shaving her legs while bent over. She also identified three images, described as "screen grabs," taken from the videos, which show close-up images of her breasts, buttocks, and genitals.

In addition to identifying themselves in the videos and images, each of the minor victims testified about how she had been affected by Gregory's actions. Gregory objected to this line of questioning during MV1's testimony.

At the close of the State's case, Gregory moved for a directed verdict on the twenty-one counts of possession of matters depicting sexually explicit conduct involving a child, arguing that the videos and images did not depict sexually explicit conduct because they

consisted only of images of the girls "bathing, drying and going to the bathroom, with the camera angles typically showing the entire body in most of these images." He reasoned that because there was "[n]o exhibition of the breasts or genitals" and "[n]one of the girls were posing provocatively showing off body parts," no reasonable jury could find that the videos and images depicted sexually explicit conduct or lewd acts. The circuit court denied Gregory's motion.

The defense rested without calling any witnesses and renewed its motion for directed verdict, which was denied. The jury found Gregory guilty, and at the jury's recommendation, the circuit court sentenced him to seven years in prison and a $10,000 fine for each count of possession of matters depicting sexually explicit conduct involving a child (Class C felonies) and three years in prison and a $10,000 fine for each count of video voyeurism (Class D felonies), with the sentences to run consecutively. This appeal followed.

## I. *Sufficiency of the Evidence*

Gregory argues that the circuit court erred in denying his motion for a directed verdict on the twenty-one counts of possession of matters depicting sexually explicit conduct. A motion for directed verdict is treated as a challenge to the sufficiency of the evidence. *Lewis v. State*, 2023 Ark. 12, at 3. In reviewing this challenge, we view the evidence in a light most favorable to the State and consider only the evidence that supports the conviction. *Id.* We will affirm the verdict if substantial evidence supports it. *Id.* Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id.*

4

Arkansas Code Annotated section 5-27-602 provides:

（a) A person commits distributing, possessing, or viewing of matter depicting sexually explicit conduct involving a child if the person knowingly:

. . . .

(2) Possesses or views through any means, including on the internet, any photograph, film, videotape, computer program or file, computer-generated image, video game, or any other reproduction that depicts a child or incorporates the image of a child engaging in sexually explicit conduct.

Ark. Code Ann. § 5-27-602(a)(2) (Repl. 2024). Sexually explicit conduct is defined as actual or simulated sexual intercourse, deviate sexual activity, bestiality, masturbation, sadomasochistic abuse for the purpose of sexual stimulation, or lewd exhibition of the genitals or pubic area of any person or breast of a female. Ark. Code Ann. § 5-27-601(15) (Repl. 2024).

Whether an image constitutes a "lewd exhibition" is a factual question for the jury. *Groomes v. State*, 2019 Ark. App. 408, at 7, 586 S.W.3d 196, 200 (citing *Cummings v. State*, 353 Ark. 618, 110 S.W.3d 272 (2003)). Our supreme court has noted that "lewd" is a common word with an ordinary meaning and that *Black's Law Dictionary* defines "lewd" as "obscene or indecent; tending to moral impurity or wantonness." *Cummings*, 353 Ark. at 628–29, 110 S.W.3d at 277. Further, the supreme court cited with approval language from a California federal district court: "Because of the sexual innocence of children, that which constitutes 'lascivious exhibition' of a child's genitals will be different from that of a 'lascivious or lewd exhibition' of an adult's genitals." *Id.* at 629, 110 S.W.3d at 278 (quoting *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986). In *Groomes*, we stated that the

5

"supreme court has also noted that a determination of lewdness is ultimately based on whether the combined effect of the visual depiction, including the age of the minor, setting, attire, pose, and emphasis on the genitals, is designed to elicit a sexual response in a pedophile viewer." 2019 Ark. App. 408, at 8, 586 S.W.3d 196, 201 (citing *Cummings*, 353 Ark. at 629 n.1, 110 S.W.3d at 278 n.1).

With these standards in mind, we turn to Gregory's argument. Gregory contends that the State failed to establish that the images depicted sexually explicit conduct.[2] He argues that the videos and images in this case are simply images of young women going about routine tasks one would expect to occur in a bathroom and do not constitute a "lewd exhibition." He acknowledges that our appellate courts have addressed sufficiency arguments challenging whether images were a lewd exhibition. *See, e.g.*, *Cummings*, *supra*; *George v. State*, 353 Ark. 269, 189 S.W.3d 28 (2004); *Groomes*, *supra*; *Whiteside v. State*, 2010 Ark. App. 232. Although the convictions in those cases were affirmed, Gregory contends that they are distinguishable because the girls in those cases were posed such that the images were sexually suggestive, the girls were directed to be sexually suggestive, or the challenged images were

[2]We note that at the outset of his argument, Gregory takes issue with some of the circuit court's comments in denying his motion for directed verdict. Pursuant to our standard of review from the denial of a directed-verdict motion, we determine whether there is substantial evidence to support a conviction. And the circuit court's comments highlighted by Gregory do not pertain to whether there was substantial evidence to support the convictions. We also note that Gregory references the First Amendment throughout his brief. To the extent he is arguing that his convictions violate the First Amendment, his argument is not preserved for our review because he did not raise the argument below and did not obtain a ruling on it. *Neal v. State*, 2020 Ark. App. 245, at 5, 601 S.W.3d 135, 137.

found among images clearly depicting child pornography or within files that had sexually suggestive names.

Gregory also likens the images in this case to those in *Commonwealth v. Rex*, 11 N.E.3d 1060, 1071 (Mass. 2014), where the Massachusetts Supreme Court affirmed the denial of a grand jury indictment, holding that "[a]s a matter of law, no grand jury could conclude that the seven photocopies constituted a 'lewd exhibition'" under the Massachusetts statute. The images in that case included photocopies of photographs of naked children taken from a National Geographic magazine, a sociology textbook, and a naturist catalogue. *Id.*

The State responds that this case is like *Groomes* and *Whiteside*. In *Groomes*, the appellant argued that because the challenged images showed nude children in "ordinary non-sexual settings," such as "two nude females standing with a volleyball" and a "nude female holding a jump rope," the images were not a "lewd exhibition" and thus did not depict "sexually explicit conduct." 2019 Ark. App. at 408, 7–8, 586 S.W.3d at 200–01. In affirming, this court held that sufficient evidence supported the jury's verdict that the five images constituted sexually explicit conduct. *Id.* at 8, 586 S.W.3d at 201. In *Whiteside*, the appellant argued that two images of naked eleven-year-old girls standing beside a bathtub did not constitute a "lewd exhibition." 2010 Ark. App. 232, at 2. This court rejected the appellant's argument that the images were "innocent depictions of girls having fun" and "not offensive to common propriety, modesty or delicacy" such that the jury should not have been allowed to consider the charges related to those images. *Id.* We stated that although the images were "mild in comparison to the other images in the appellant's possession, [they] were at the very

7

least indecent. The context within which these images were found, among quantities of child pornography, lend more strength to the assertion that these images were possessed for lewd purposes." *Id.* at 3-4. Noting that the definition of lewd is more inclusive and not simply synonymous with the word "obscene," we held that the two counts were properly submitted to the jury to decide whether the appellant was guilty. *Id.* at 4.

Having reviewed the record, including the videos and images presented at trial, we conclude that the circuit court did not err in denying Gregory's motion for directed verdict. The images in this case depict female children changing clothes, showering, shaving their legs and pubic area, and using the bathroom. The breasts and genitals of the children are on full display. In addition, Gregory took three "screen grabs"—or photographs from a video—of MV6, which consist of close-up images of her breasts, buttocks, and genitals. In one image, MV6's legs are spread, and her genitals are the focal point.

Moreover, we cannot ignore the context of how the images were obtained. Unlike the images described in *Rex*, *supra*, these were not images taken from a *National Geographic* magazine or a textbook. And although the minor victims in this case were not directed or posed, the State presented evidence of how Gregory secretly obtained the videos and images. He removed the bathtub faucet during renovations but did not replace it, leaving a hole located a few inches above the edge of the MV1's bathtub. Gregory's bathroom was on the other side of the hole from which he had a direct view of both MV1's shower and the toilet. In one of the videos of MV1, the hole is partially obstructed with debris, but in other videos, the hole is cleaned out creating an unobstructed view. The videos show that Gregory

8

repositioned the phone camera angle or moved the phone around to get a better view of the minor victims' breasts or genitals.

In sum, the images in the videos and the "screen grabs" depict the breasts and genitals of children, and they were secretly obtained. This constitutes substantial evidence supporting the jury verdicts that the images in Gregory's possession were at the very least indecent and therefore lewd. *See Whiteside*, 2010 Ark. App. 232, at 3–4. Accordingly, we affirm Gregory's convictions for possession of images depicting sexually explicit conduct involving a child.

## II. *Evidentiary Argument*

During MV1's testimony, Gregory objected when the State asked how this incident had affected her. He argued that the information sought was irrelevant and sought only to inflame the jury. The circuit court overruled the objection, stating that it thought it was important in this case because it was about "what the victim feels and the damage that it [did] to her psychologically." MV1 went on to testify how her father's actions negatively affected her.

Before trial, Gregory filed a pretrial motion in limine to prohibit the minor victims' testimony about how his actions had affected them. However, the circuit court withheld a ruling until trial "depending on how the testimony plays out and questions that are asked." When a motion in limine is filed and the circuit court declines to rule on it, it is necessary for counsel to make a specific objection during the trial. *Massengale v. State*, 319 Ark. 743, 746, 894 S.W.2d 594, 595 (1995). At trial, Gregory objected when MV1 was asked this

9

question but did not object when each of the other minor victims was asked the same question.

A defendant must object at the first opportunity, and he must then renew his objection each time the issue is raised; otherwise, he has waived his argument regarding that issue on appeal. *Vaughn v. State*, 338 Ark. 220, 225, 992 S.W.2d 785, 787–88 (1999). When a question previously objected to is repeated, and there is no second objection, the matter is waived on appeal. *Stephens v. State*, 328 Ark. 81, 89, 941 S.W.2d 411, 415 (1997). Because Gregory failed to object to the same questions when the other five victims were questioned, the issue is not preserved for review as to those five victims. Moreover, the other five victims testified similarly—which Gregory acknowledges—when asked how his actions had affected them. Their answers included nightmares, panic attacks, fear of showering or using the bathroom, and a loss of trust in others. Thus, MV1's testimony was repetitious to the testimony of the other five victims, which was admitted without objection. Evidence that is merely cumulative or repetitious of other evidence admitted without objection cannot be prejudicial. *Edison v. State*, 2015 Ark. 376, at 9, 472 S.W.3d 474, 479. This court will not reverse an evidentiary decision by the circuit court in the absence of prejudice. *Id.*, 472 S.W.3d at 479.

Affirmed.

KLAPPENBACH, C.J., and BARRETT, J., agree.

*Lisa-Marie Norris*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.