Cite as 2025 Ark. App. 579

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR-24-246

| | |
|---|---|
| TINA HORTON | **Opinion Delivered** December 3, 2025 |
| **APPELLANT** | APPEAL FROM SEARCY COUNTY CIRCUIT COURT [NO. 65CR-23-41] |
| V. | |
| STATE OF ARKANSAS | HONORABLE H.G. FOSTER, JUDGE |
| **APPELLEE** | |
| | AFFIRMED |

## STEPHANIE POTTER BARRETT, Judge

Appellant Tina Horton appeals from her conviction by a Searcy County jury on one count of refusal to submit to arrest, a Class B misdemeanor, and her sentence of a $300 fine. For her sole point on appeal, Horton challenges the sufficiency of the evidence to support her conviction. We affirm.

On September 7, 2022, Horton was arrested at her home by Searcy County sheriff's deputies on a charge of harassment. The arresting deputies contended that Horton refused to submit to her arrest when she tried to retreat into the house, tried to shut the front door on the deputies, and then scuffled with deputies as they tried to handcuff her.

Horton was charged with one count of resisting arrest, a Class A misdemeanor, pursuant to Arkansas Code Annotated section 5-4-103(a) (Repl. 2024). She was convicted on the charge following a February 6, 2023 bench trial before the district court. She appealed

to circuit court on June 1, 2023, and the prosecutor amended the criminal information to reduce the charge to the lesser offense of refusal to submit to arrest, a Class B misdemeanor, pursuant to Arkansas Code Annotated section 5-54-103(b) (Repl. 2024). A jury trial was held before the circuit court on October 18, 2024.

At trial, Deputy Caleb Horn testified that around 9:30 p.m. on September 7, 2022, Deputy Horn and Deputy Michael Tharp went in uniform to the residence of Tina Horton to serve her with an arrest warrant for a charge of harassment. Deputy Horn drove a marked patrol vehicle, and Deputy Tharp drove a department-issued unmarked vehicle. When Horn and Tharp arrived at the house and stepped out of their patrol vehicles, Horton came outside of the house and stood in the front doorway of her residence. The deputies identified themselves and informed Horton they were serving her with an arrest warrant for harassment; a bond had been set for her release; and she had to be taken to the sheriff's department for booking and processing.

Horton then stepped backward into the home and attempted to shut the door on the deputies, saying that she needed to talk to her husband. Deputy Horn explained that officers are trained not to allow a suspect to leave their sight and retreat inside a closed building during an arrest because it gives the suspect an opportunity to flee and presents a safety risk to officers. So as Horton tried to close the door, deputies pushed the door open and entered the home. The deputies tried to handcuff Horton, but she pulled away, stiffened her body, and grabbed the doorknob. Deputy Horn testified that he had to pry Horton's hand from the doorknob, and he and Tharp had to force Horton's hands behind her back to handcuff

her.  After a brief struggle, the deputies handcuffed Horton and walked her outside to a patrol vehicle.

The video footage from Deputy Tharp's body camera was also played into evidence. The deputies can be seen approaching Horton's house, and Horton can be seen stepping out onto the home's front porch and then moving back into the front doorway of the home. When deputies step onto the porch, Horton is standing within the open front door between a glass storm door and a solid inner door.  She holds a cell phone to her ear.  Horton talks with the deputies about the warrant and challenges the deputies with questions about the validity of the harassment charge.  She then steps backward into the house, turns away from the deputies, and moves to close the inner door.  The deputies stop Horton from closing the door and instruct her to come back outside and stay where they can see her.  Horton tells the deputies she needs to talk with her husband, and deputies respond that they cannot let her out of their sight.  The deputies again instruct Horton to step outside, but she begins to yell for her husband.  The deputies step over the threshold of the home after Horton. Horton argues with the deputies over whether they are allowed to enter her home.  During this argument, Horton says she needs to talk with her husband; there are children in the house; she needs her shoes; and she needs her medication.

Once the deputies enter the house, the lighting is very dim and the angle of the body camera makes for poor visibility.  Deputies try to handcuff Horton as she yells for her husband and appears to struggle against the handcuffs.  One deputy says that Horton will be charged with resisting arrest, and Horton repeats her shouts for her husband.  While

3

deputies attempt to handcuff Horton, sounds of a scuffle can be heard, and Deputy Horn can be seen pulling Horton's hand away from the doorknob.

Horton's adult daughter enters through the front door, and her husband emerges from a nearby bedroom. Horton's daughter speaks calmly with the deputies and Horton and helps find Horton's shoes. Horton's husband utters curses and other expletives but does not interfere with the arrest. After speaking with Horton's daughter and husband about the bond set for Horton's release, the deputies walk Horton to a patrol vehicle, loosen her handcuffs, and seat her in the vehicle.

At the close of the State's evidence, Horton moved for directed verdict. The motion was denied, and Horton testified. Horton explained that the night of the arrest, she had just put her grandchildren to sleep in her home, her husband was asleep in a bedroom, and she was dressed for bed when she received a call from her daughter who lives next door that cop cars had pulled into the yard. Horton stated that as she was talking with her daughter on the phone, she stepped out the front door of her house and saw the deputies approaching the house. When the deputies told her they had a warrant for her arrest, she became concerned and wanted to wake her husband so that he knew where she was going and that he should take care of their grandchildren. She denied trying to shut the door in the deputies' faces or gripping the handle to prevent the deputies from entering the house. She contended that the angle of Tharp's body camera made it appear that she shut the door farther than she actually closed it. She testified that she never intended to refuse arrest, she

just wanted to tell her husband what was happening and retrieve her shoes and medication before leaving with the deputies.

Horton moved for directed verdict again, and the circuit court denied the motion. The jury convicted her of the charge, and Horton was sentenced to pay a $300 fine. On appeal, Horton argues that the circuit court erred in denying her motion for directed verdict because the State did not present sufficient evidence that she refused to submit to arrest.

A motion for directed verdict is treated as a challenge to the sufficiency of the evidence. *Gregory v. State*, 2025 Ark. App. 164, at 4, 708 S.W.3d 844, 847. When reviewing a challenge to the sufficiency of the evidence, the evidence is assessed in the light most favorable to the State. *Id.* This court considers only the evidence that supports the verdict and will affirm if there is substantial evidence to support it. *Id.* Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id.* Substantial evidence may be direct, circumstantial, or a combination of the two. *Moody v. State*, 2014 Ark. App. 538, at 8, 444 S.W.3d 389, 393. "A criminal defendant's intent or state of mind is rarely capable of proof by direct evidence and must usually be inferred from the circumstances of the crime." *Steggall v. State*, 340 Ark. 184, 190, 8 S.W.3d 538, 542 (2000).

The jury, not the court on appeal, weighs the evidence and judges the credibility of witnesses. *Id.*; *Lewis v. State*, 2014 Ark. 730, at 4, 451 S.W.3d 591, 594. Matters of credibility are for the jury, which can choose to believe part or all of any witness's testimony and resolve

5

any conflict in the evidence or testimony. *Miller v. State*, 2025 Ark. App. 229, at 5, 711 S.W.3d 850, 854.

Horton contends that she was compliant with the arresting deputies' requests, but the deputies misconstrued her request to speak to her husband and retrieve some personal items before leaving with them. Viewing the evidence in the light most favorable to the State, we conclude that the circuit court did not err in submitting the case to the jury, and for that reason we affirm.

"A person commits the offense of refusal to submit to arrest if he or she knowingly refuses to submit to arrest by a person known to him or her to be a law enforcement officer effecting an arrest." Ark. Code Ann. § 5-54-103(b)(1). For purposes of the statute, "'refuses' means active or passive refusal." *Id.* § 5-54-103(b).

Although at common law a person had the right to resist an arrest he or she deemed illegal, Arkansas and other states have statutorily restricted the common-law right to resist arrest, even if the arrest is illegal, because "the place to litigate the legality of an arrest is in court, not the streets." *Williams v. State*, 320 Ark. 211, 219, 895 S.W.2d 913, 917 (1995). The offense of refusal to submit to arrest occurs when a person knowingly engages in behavior to avoid arrest that does not meet the physical-force standard required for resisting arrest. The *Pursley* court held that the defendants—protestors who were also arrested on trespass charges—were guilty of refusal to submit to arrest when they offered their hands to officers for handcuffs but then refused to walk to a police van, requiring officers to carry them to the vehicle. *Pursley v. State*, 302 Ark. 471, 474, 791 S.W.2d 359, 361 (1990).

The State presented evidence through testimony and the body-cam footage that was sufficient proof for the jury to conclude that Horton knew the deputies were law enforcement officers, knew she was under arrest, and refused to comply with the deputies' instructions. Horton's assertion that there was no proof of her intent to refuse arrest amounts to a request that this court second-guess the credibility determinations of the jury and reweigh the proof. This is something we will not do. *Kimery v. State*, 2023 Ark. App. 473, at 2, 678 S.W.3d 816, 819. Accordingly, we affirm.

Affirmed.

KLAPPENBACH, C.J., and HIXSON, J., agree.

*The Law Offices of J. Paul Coleman*, by: *Jay Paul Coleman*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.